545 F.2d 210
 178 U.S.App.D.C. 132
 DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Petitioner,
v.
Patricia Ann Ekar BOUGHMAN et al., Respondents.
INTERNATIONAL UNION OF OPERATING ENGINEERS and the Travelers
Insurance Company, Petitioners,
v.
Patricia Ann Ekar BOUGHMAN et al., Respondents,
and
Director, Office of Workers' Compensation Programs, United
States Department of Labor.
 Nos. 75-1449 and 75-1546.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 15, 1976.
Decided Nov. 5, 1976.
As Amended Nov. 29, 1976.
 
 Joshua T. Gillelan, II, Atty., U. S. Dept. of Labor, Washington, D. C., with whom George M. Lilly, Atty., U. S. Dept. of Labor, Washington, D. C., was on the brief, for petitioner in No. 75-1449.
 Albert Sennett, San Francisco, Cal., with whom Frank B. Hugg, San Francisco, Cal., was on the brief, for petitioners in No. 75-1546.
 Gerald J. Tiernan, San Francisco, Cal., for respondents.
 James Buckley Ostmann and John R. Coyle, Washington, D.C., were on the brief as amicus curiae.
 Before WRIGHT and ROBB, Circuit Judges, and WEIGEL,* District judge.
 Opinion for the court filed by J. SKELLY WRIGHT, Circuit Judge.
 J. SKELLY WRIGHT, Circuit Judge:
 
 I. INTRODUCTION
 
 1
 These two cases arise out of an award of death benefits made pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. (hereinafter the Act) as applied to the District of Columbia by the D.C. Workmen's Compensation Code, 36 D.C. Code § 501 (1973). The award was made to the widow and children of Roger Ekar who was employed as a business representative of petitioner International Union of Operating Engineers in Region 10 of that union covering the western states. We consider here whether that award was excessive.
 
 
 2
 In December 1972 Mr. Ekar was fatally shot by unknown assailants at a union hall in Sacramento, California. The decedent's widow[1] and two children filed claims under both the California Workers' Compensation Act and the District of Columbia Code. The California Workers' Compensation Appeals Board awarded benefits and subsequently a federal administrative law judge made an additional award of benefits. 74-DCWC-101 (October 25, 1974). This additional award was affirmed by the Benefits Review Board, 1 BRBS 406 (April 11, 1975) a body which hears and determines appeals from decisions of administrative law judges regarding claims of compensation under the Longshoremen's and Harbor Workers' Compensation Act and its extensions and under certain other legislation. See United States Department of Labor, 63rd Annual Report Fiscal Year 1975 at 75.
 
 
 3
 In Case No. 75-1546, International Union of Operating Engineers v. Boughman, the union and its insurance company appeal from the Board's award on three different grounds. First, petitioners argue that extension of the D.C. Workmen's Compensation Code to the present claim constitutes a violation of the full faith and credit clause of the United States Constitution. Secondly, petitioners argued that the full faith and credit clause is also violated by the Board's refusal to find that the California Workers' Compensation Act is the exclusive remedy for the benefits claimed. Lastly, petitioners argue that the Board misinterpreted the Act in refusing to impose the same maximum limitation for death benefits as for disability benefits. They are joined in this argument by petitioner in Case No. 75-1449, Director, Office of Workers' Compensation Programs v. Boughman.
 
 
 4
 For the reasons stated in its decision we affirm the Board on the first two points. On the last point, however, we reverse and remand. The sections of the Act on which we rest our reversal are, concededly, not free from ambiguity. After careful study, however, we conclude that the decision below cannot stand.
 
 II. THE STATUTORY BACKGROUND
 
 5
 Until its amendment in 1972 the Act clearly set limits on the benefits that could be awarded to employees who were disabled as well as to survivors of employees who were killed. The maximum limitation on disability benefits was $70 per week. Act § 6(b), as amended by Pub.L. 87-87, § 1, 75 Stat. 203 (1961), 33 U.S.C. § 906(b) (1970). The maximum limitation on weekly death benefits before the 1972 amendment, on the other hand, was provided by combination of Sections 9(b), (c), and (d) with Section 9(e). These former subsections had limited the total death benefits to 66 2/3 percent of the deceased employee's weekly wage. Section 9(e), as amended by Pub.L. 87-87, § 2, 75 Stat. 203, 33 U.S.C. § 909(e) (1970), in turn limited to $105 the average weekly wages of the employee that were to be considered in determining the weekly payments which the beneficiaries were to receive. Accordingly, the maximum weekly amount payable as death benefits was 66 2/3 percent of $105, i. e., $70 the same as the dollar maximum applicable to weekly disability benefits as provided by Section 6(b).[2] This relationship between the specified maximum compensation for permanent total disability and for death benefits had always existed.[3]
 
 
 6
 In 1972, however, the amendments removed both the fixed Section 6(b) limit and the Section 9(e) limit. For the former Congress substituted an annually increasing maximum on weekly benefits measured as a percentage of the national average weekly wage. Amendment § 5(a), 86 Stat. 1252, amending Act § 6(b). For the latter no new provision was substituted by Section 10(d) of the amendments (86 Stat. 1258, amending Act § 9(e)).[4] The question we address today is whether Congress intended the maximum limits set out in Section 6(b) to be applicable to awards of death benefits under Section 9.[5]
 
 
 7
 The administrative law judge in this case held that the claimants were entitled to death benefits equal to 66 2/3 percent of the deceased's weekly wage of $306. He refused to apply the maximum limitation of Section 6(b). Had he done so, the award would have been limited to $167 a week for the Section 6(b) (1)(A) period, and to the percentages of the national average wage set forth in Section 6(b)(1)(B)-(D) thereafter. Section 6(b)(1)(A). Without reviewing the issue anew, the Board affirmed on the basis of its opinion in Rasmussen v. Geo Control, Inc., 1 BRBS 378 (April 3, 1975), appeal docketed Nos. 75-2038, 75-2172 (9th Cir., filed May 8 and 29, 1975, consolidated June 17, 1975), which held that the limits on disability benefits under Section 6(b) were not applicable to death benefit awards. We disagree and hold that the maximum limits under Section 6(b) were meant to apply to death benefits awarded under Section 9.[6]
 
 
 8
 Foremost among our reasons for reaching this conclusion is the commonsense conviction that Congress did not intend to provide, without ever so stating and in sharp contradistinction to every previous version of the Act,[7] that a totally disabled employee, in need of continuing care, should be compensated less generously than the family of an employee who dies. It is hardly within the policy of this Act to place a premium on death.
 
 
 9
 Our conclusion is supported by reference to numerous state statutes closely similar to the present one. Cf. Merck & Co. v. Kidd, 242 F.2d 592, 594-595 (6th Cir.), cert. denied, 355 U.S. 814, 78 S.Ct. 15, 2 L.Ed.2d 31 (1957). No state workers' compensation law is without absolute maximums for death benefits.[8] Moreover, at least 10 states provide a maximum limitation on death benefits based upon a percentage of the state's average weekly wage.[9] The Board's ruling that the survivors of a deceased employee are in a position superior to all other claimants under the Act because the former are not subject to the limits of Section 6(b) creates a serious and almost unique anomaly.
 
 
 10
 Still, we would, of course, give effect to this anomaly if it were mandated by the Act either by its specific language or in the legislative history. In fact, however, thorough consideration of the Act itself as well as the legislative history of the 1972 amendments provides additional evidence that Congress had no such intent.
 
 
 11
 III. THE LEGISLATIVE HISTORY OF THE 1972 AMENDMENTS
 
 
 12
 In its decision in Rasmussen the Board recognized that the conclusion that only disability benefits and not death benefits were limited by Section 6(b) created "an anomalous situation." 1 BRBS at 381. The Board therefore found it "appropriate to look beyond the plain language of the statute and consider persuasive evidence of legislative intent." Id. at 382. Unfortunately, however, the Board's interpretation of the pertinent legislative history is less than convincing.
 
 
 13
 For example, the Board examined a number of statements contained in the closely similar reports of the Senate Committee on Labor and Public Welfare (S. Rep. No. 92-1125, 92d Cong., 2d Sess. (1972)) and the House of Representatives Committee on Education and Labor (H.R. Rep. No. 92-1441, 92d Cong., 2d Sess. (1972)), on the bills which became the amendments.[10] This examination led the Board to conclude:
 
 
 14
 In its discussion of death benefits, the Senate Committee indicated no intent to apply the maximum amount for disability compensation provided in Section 6(b)(1) to death benefits provided in Section 9(b).
 
 
 15
 Rasmussen v. Geo Control, Inc., supra, 1 BRBS at 384. Although this statement is true with respect to the Senate Committee's comments on the amendments relating solely to death benefits, it is not true as regards other sections[11] and, furthermore, it leaves unsaid what is far more significant: there is absolutely no reference to elimination of the weekly maximum on death benefits anywhere in the Senate Committee's report. In view of the uninterrupted parallelism between disability benefits and death benefits,[12] and the lack of any suggestion by Congress as to why the two kinds of benefits should be subject to different maximums, it is hard to believe that Congress intended to eliminate the maximum limitation sub silentio.
 
 
 16
 The Board also relied, however, on the House Committee's "Section-by-Section Description of Committee Amendment to the Bill," H.R. Rep. No. 92-1441, supra, at 14-24. The Board found that in the specific description of Section 10(d) of the amendments the House Committee had included "language which indicates that elimination of the maximum benefit provision from Section 9(e) of the Act, 33 U.S.C. § 909(e), was done consciously and intentionally." 1 BRBS at 385. The language relied upon,[13] though, does not support the Board's conclusion. Rather, it is a straightforward explanation of the literal effect of Section 10(d) of the amendments on Section 9(e) of the Act taken by itself. Although the House Committee's description is perfectly accurate, therefore, in saying that the maximum limitations formerly contained in Section 9(e) were eliminated, this does not even face the question of whether the maximum limits contained in Section 6(b)(1) of the Act are applicable to death benefits. Certainly Congress intended to eliminate any maximum dollar limitation on death benefits. Yet the real issue is whether Congress intended to eliminate all maximums on death benefits or just to change the nature of the maximum. On this issue the Committee's statement which the Board quoted is unpersuasive either way.IV. SECTION 6(d)
 
 
 17
 Further indication that Congress intended the Section 6(b) maximum limitations to be applicable to death benefits is found in the language of Section 6(d) as amended. It contains an express reference to death beneficiaries indicating that they are indeed subject to the same limitations as plainly apply to disabled workers. Specifically, Section 6(d) provides:
 
 
 18
 Determinations under this subsection (§ 5(a) of the amendments; hence § 6(b)-(d) of the amended Act) with respect to a period shall apply to employees or survivors currently receiving compensation for permanent total disability or death benefits during such period, as well as those newly awarded compensation during such period.
 
 
 19
 Amendments § 5(a), 86 Stat. 1253, amending Act § 6(d), 33 U.S.C. § 906(d) (Supp. V 1975) (emphasis added).
 
 
 20
 In discussing this language the Senate and House committee reports on the proposed amendments of the Act stated: "To the extent that employees receiving compensation for total permanent disability or survivors receiving death benefits receive less than the compensation they would receive if there were no phase-in, their compensation is to be increased as the ceiling moves to 200 percent." S. Rep. No. 92-1125, 92d Cong., 2d Sess. 5 (1972); H.R. Rep. No. 92-1441, 92d Cong., 2d Sess. 3 (1972). More helpful indication of Congress' intent is found in two pairs of identical bills that were introduced in the 92nd Congress in 1971, considered by the Senate Committee on Labor and Public Welfare and the House Committee on Education and Labor, and became the nucleus of the amendments that we consider today, S. 2318 and H.R. 12006, and S. 525 and H.R. 3505.[14] The first pair, as introduced, would have removed all limitations except the limitation to 66 2/3 percent of the employee's wages. S. 2318, 92d Cong., §§ 4(a), 10(b); H.R. 12006, 92d Cong., §§ 4(a), 10(b). The latter, on the other hand, would have retained fixed "dollar maximums" on both kinds of cases, and would have continued the pattern of a maximum on compensation in disability cases which was 66 2/3 percent of the maximum on wages to be considered in death cases ($110 and $178 respectively). S. 525, 92d Cong., §§ 4(a), 8(c); H.R. 3505, 92d Cong., §§ 4(a), 8(c). Both sets of bills, despite their considerable differences, would have continued to treat deaths and disabilities in the same way either both subject to the same maximum or neither subject to any maximum except two thirds of the employee's wages.[15]
 
 
 21
 The only "phase-in" of the amended Act is the "phase-in" of the "ceiling" provided by Section 6(b)(1), moving the "ceiling" by annual progression to 200 percent of the national average wage. The "ceiling" referred to by the committees, thus, is undeniably the maximum weekly benefit provided by Section 6(b), applicable in terms only to compensation for disability. It is also undeniable, therefore, that the committees which wrote the improved benefit structure, and the Congress to which they reported on the bill, contemplated that there were "survivors (who would) receive less than the compensation they would receive if there were no phase-in" in the maximum weekly allowance, i. e., that the Section 6(b) maximum would apply to death benefits. The Board's conclusion that it does not apply rests on the assumption that there are no such survivors an assumption that makes the congressional reference to such persons unintelligible. The only plausible interpretation of the committees' statement is that death benefits restricted by the initial phases of the increase in the benefit "ceiling" from $70 to 200 percent of the national average weekly wage are to be increased as the subsequent phases take effect.
 
 
 22
 This interpretation of the meaning of Section 6(d) is further reinforced by an examination of the statute in its entirety with effect given to each part. Cf. United States v. Menasche, 348 U.S. 528, 538-539, 75 S.Ct. 513, 99 L.Ed. 615 (1955). Persons receiving the minimum death benefits (like all others "currently receiving compensation for permanent total disability or death benefits") are unquestionably entitled to increases in compensation each October 1 by Section 10(f) of the Act as amended.[16] Such increases pursuant to Section 10(f) are equal to those that would be arrived at by the effect of Section 6(d) as construed by the Board. Thus if Section 6(d)'s statement that the newly determined national average wage is applicable to survivors currently receiving death benefits has no meaning beyond that to which it was limited by the Board, it is entirely duplicative of and included in Section 10(f). We hold that it is more logical, more consonant with principles of statutory construction, and more consistent with the legislative history of the Act to read Section 6(d) as making both death benefits and permanent total disability benefits subject to the maximum limitations of Section 6(b) yet "to the extent" so limited by the "phase-in," "to be increased as the ceiling moved to 200 percent."
 
 
 23
 Lastly, we find still further support for the conclusion we reach today in the summary of selected labor laws issued by a subcommittee of the Senate Committee on Labor and Public Welfare.[17] Although this report, which was subsequent to the passage of the amendments, does not deserve weight equal to statements made contemporaneously with passage, it is persuasive extrinsic evidence of congressional intent. Cf. Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 380-381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1968) (legislation declaring intent of previous statute). The report described the amended Act as follows:
 
 Amount of Benefits
 
 24
 Compensation for disability and death is based on the average weekly wage of the injured worker. Maximum benefits may not exceed a specified percentage of the national average weekly wage. The percentage increases from 125 prior to September 30, 1973, to 200 beginning October 1, 1975. The minimum is 50% of the national average weekly wages or the employees' actual weekly wage, whichever is less.[18]
 
 
 25
 (Emphasis added.)
 
 V. CONCLUSION
 
 26
 We therefore hold that the Board was correct in its decision that the full faith and credit clause was not violated by either the extension of the District of Columbia's Workmen's Compensation Code to the present claim or the refusal to find that the California Workers' Compensation Act is the exclusive remedy for the benefits claimed. We also hold, however, that the Board erred in awarding respondents death benefits in excess of the statutory maximum applicable thereto. The Board's decision is thus reversed and remanded for modification in accordance with this opinion.
 
 
 27
 So ordered.
 
 
 
 *
 Of the United States District Court for the Northern District of California, sitting by designation pursuant to 28 U.S.C. § 292(d) (1970)
 
 
 [1]
 The decedent's widow has subsequently remarried
 
 
 [2]
 The only difference in effect between the $70 limitation on weekly disability payments under § 6(b) and the $105 limitation on considered wages under § 9(e) was that only the maximum aggregate percentage of weekly wages (66 2/3) would result in an award of $70 weekly death benefits. Thus a widow without children, for example, although nominally entitled by § 9(b) to 35% of her deceased husband's average weekly wage, was not entitled to $70 even if her husband's weekly wages were in excess of $200; her maximum allowable benefit was 35% of $105. For a widow with three or more children, however, the maximum on considered wages amounted to the same thing as the § 6(b) limit of $70 a week in benefits
 
 
 [3]
 Act of July 26, 1956, c. 735, §§ 1, 4, 70 Stat. 654, 655 ($54 and $81 respectively); Act of June 24, 1948, c. 623, §§ 1, 3, 62 Stat. 602 ($35 and $52.50 respectively); Act of March 4, 1927, c. 509, §§ 6(b), 9(e), 44 Stat. 1426, 1430 ($25 and $37.50 respectively)
 
 
 [4]
 The relevant sections of the Act before and after amendment are set forth below. Changes as a result of the 1972 amendments are italicized
 Pre-1972
 § 909. Compensation for death.
 (e) In computing death benefits the average weekly wages of the deceased shall be considered to have been not more than $105 nor less than $27 but the total weekly compensation shall not exceed the weekly wages of the deceased.
 § 906. * * *
 (b) Compensation for disability shall not exceed $70 per week and compensation for total disability shall not be less than $18 per week: Provided, however, That if the employee's average weekly wages, as computed under section 910 of this title, are less than $18 per week he shall receive as compensation for total disability his average weekly wages.
 Post-1972
 § 909. Compensation for death.
 (e) In computing death benefits the average weekly wages of the deceased shall be considered to have been not less than the applicable national average weekly wage as prescribed in section 906(b) of this title but the total weekly benefits shall not exceed the average weekly wages of the deceased.
 § 906. * * *
 (b)(1) Except as provided in subsection (c) of this section, compensation for disability shall not exceed the following percentages of the applicable national average weekly wage as determined by the Secretary under paragraph (3):
 (A) 125 per centum or $167, whichever is greater, during the period ending September 30, 1973.
 (B) 150 per centum during the period beginning October 1, 1973, and ending September 30, 1974.
 (C) 175 per centum during the period beginning October 1, 1974, and ending September 30, 1975.
 (D) 200 per centum beginning October 1, 1975.
 (2) Compensation for total disability shall not be less than 50 per centum of the applicable national average weekly wage determined by the Secretary under paragraph (3), except that if the employee's average weekly wages as computed under section 910 of this title are less than 50 per centum of such national average weekly wage, he shall receive his average weekly wages as compensation for total disability.
 (3) As soon as practicable after June 30 of each year, and in any event prior to October 1 of such year, the Secretary shall determine the national average weekly wage for the three consecutive calendar quarters ending June 30. Such determination shall be the applicable national average weekly wage for the period beginning with October 1 of that year and ending with September 30 of the next year. The initial determination under this paragraph shall be made as soon as practicable after October 27, 1972.
 (c) The maximum rate of compensation for a nonappropriated fund instrumentality employee shall be equal to 66 2/3 per centum of the maximum rate of basic pay established for a Federal employee in grade GS-12 by section 5332 of Title 5, and the minimum rate of compensation for such an employee shall be equal to 66 2/3 per centum of the minimum rate of basic pay established for a Federal employee in grade GS-2 by such section.
 (d) Determinations under this subsection with respect to a period shall apply to employees or survivors currently receiving compensation for permanent total disability or death benefits during such period, as well as those newly awarded compensation during such period.
 
 
 [5]
 Section 9(e) explicitly provides that the minimum limits set out in § 6(b) be applicable to the award of death benefits
 
 
 [6]
 In a recent decision the Third Circuit reached the same conclusion on this precise point. Director, Office of Workers' Comp. Programs v. O'Keefe, 545 F.2d 337 (No. 75-2297, decided Oct. 12, 1976)
 
 
 [7]
 See note 3 supra
 
 
 [8]
 Analysis of Workmen's Compensation Laws, Chamber of Commerce of the United States, Chart VII (1975 ed.). This report states, at 18:
 Although death is the ultimate work-related tragedy, the economic loss associated with death cases is often less than that of a permanent total disability.
 
 
 [9]
 Id. at Chart VII
 
 
 [10]
 S. 2318, 92d Cong., as reported Sept. 13, 1972, 118 Cong.Rec. 30397; H.R. 12006, as reported Sept. 25, 1972, 118 Cong.Rec. 32023
 
 
 [11]
 See Part IV infra
 
 
 [12]
 See note 3 supra
 
 
 [13]
 The language in question is as follows:
 (Section 10(d)) amends section 9(e) of the Act, eliminating the dollar minimum and maximum set out under p(re)sent law for the average weekly wages of the deceased to be used in computing death benefits. The minimum substituted by this amendment is the applicable national average weekly wage as prescribed in section 6(b) of the Act, except that the total weekly benefits may not exceed the actual average weekly wages of the deceased.
 H.R. Rep. No. 92-1441, 92d Cong., 2d Sess. 19 (1972) (emphasis added).
 
 
 [14]
 S. 2318 and H.R. 12006 as reported by the committees were a nearly identical combination of provisions from the two sets of bills, with some provisions not contained in either
 S. 2318 was passed by the Senate on Sept. 14, 1972 (118 Cong.Rec. 30670, 30674); H.R. 12006 was passed by the House on Oct. 14, 1972 (118 Cong.Rec. 36376, 36389), and returned to the Senate, which concurred in the House version (118 Cong.Rec. 36265, 36274) (Oct. 14, 1976).
 
 
 [15]
 It is also instructive to note that, during the time the bills were before the committees, the Report of the National Commission on State Workmen's Compensation Laws (G.P.O.1972) was submitted to Congress. The Commission, which was created by § 27 of the Occupational Safety and Health Act of 1970, Pub.L. 91-596, 84 Stat. 1590, 1616, 29 U.S.C. § 676, to study the adequacy of state compensation laws and advise Congress as to the desirability of federal action, made a number of recommendations that were incorporated into the amendments. The most significant of these were the improvements in benefit levels: both the "phased-in" maximum of 200% of the national average weekly wage (Act § 6(b)(1), as amended ) and the mechanism for annually increasing benefits (Act § 10(f), as amended ) were adopted directly from the Commission's recommendations. See S. Rep. No. 92-1125, 92d Cong., 2d Sess. 2, 4, 5 (1972); H.R. Rep. No. 92-1441, supra note 13, at 2. It is revealing, therefore, that the Commission not only recommended the same "Maximum Weekly Benefit" phased in to 200% of the statewide average weekly wage in death cases as in disability cases, but also noted that exactly the same arguments supported having such a maximum in both types of cases. Compare Report of the National Commission, supra, 60-62, R. 3.9 & 3.10, and 64-65, R. 3.15 & 3.16, with id., 71-72, R. 3.23 & 3.24; see also id. at 37-38
 Nevertheless, the Board's decision suggests that Congress, while adopting in all particulars the National Commission's recommendations with respect to a maximum weekly benefit limiting high-income employees who become permanently totally disabled, rejected the same recommendations with respect to the benefits payable when such employees are killed. No hint of such a rejection, however, is found in the legislative history.
 
 
 [16]
 The Board's reference to § 10(h), 1 BRBS at 386, is apparently a typographical error. The annual increases provided by § 10(h)(3) are only an extension of § 10(f) to cases to which it might not otherwise apply
 
 
 [17]
 Compilation of Selected Labor Laws Pertaining to Labor Relations, Subcommittee on Labor of the Senate Committee on Labor and Public Welfare (G.P.O.1974)
 
 
 [18]
 Id., Part III at 769