567 F.2d 1385
 DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Petitioner-Appellant,
v.
Genevieve O. RASMUSSEN and William C. Rasmussen, Jr.,
Respondents-Appellees.
GEO CONTROL, INC., and New Hampshire Insurance Company, Petitioners,
v.
Genevieve O. RASMUSSEN and William C. Rasmussen, Jr.
(William C. Rasmussen, Deceased), Respondents.
 Nos. 75-2038, 75-2172.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 20, 1978.
 
 Joshua T. Gillelan, II (argued), Washington, D. C., Frank B. Hugg (argued), San Francisco, Cal., for petitioners.
 James B. Ostmann (argued), Washington, D. C., Robert E. Babcock (argued), Portland, Or., for respondents.
 On Petition to Review a Decision of the United States Department of Labor Benefits Review Board.
 MERRILL and TRASK, Circuit Judges, and TAKASUGI,* District Judge.
 MERRILL, Circuit Judge:
 
 
 1
 Petitioners seek review of a decision and order of the Benefits Review Board awarding compensation to respondents as survivors of a deceased employee covered by the Longshoremen's and Harbor Workers' Compensation Act.[1]
 
 
 2
 William C. Rasmussen, in 1973, was employed by petitioner Geo Control, Inc., as hydrologist under a public work contract between Geo Control and the United States. His average weekly wage was $798. His employment was covered by the Defense Base Act, 42 U.S.C. §§ 1651, et seq., which incorporates the Longshoremen's and Harbor Workers' Compensation Act (the Act), and Geo Control's liability for compensation under the Act was covered by insurance provided by petitioner New Hampshire Insurance Co.
 
 
 3
 On May 11, 1973, Rasmussen, while in the course of his employment by Geo Control in Vietnam, received fatal injuries while traveling as a passenger in a motor vehicle which triggered a land mine explosion. Respondent Genevieve O. Rasmussen is his surviving widow and is entitled to death benefits under the Act. Respondent William C. Rasmussen, Jr., is his surviving son and is entitled to benefits until his 18th birthday, or, if he qualifies under the Act as a student, until his 23d birthday.
 
 
 4
 A dispute arose as to the amounts of compensation to which respondents were entitled. In due course a hearing was had before an administrative law judge, and on October 24, 1974, the judge ordered petitioners Geo Control and New Hampshire Insurance Co. to pay to Mrs. Rasmussen from May 11, 1973, and continuing during her widowhood the sum of $399 a week, being 50 percent of her husband's average weekly wage at the time of his death. The judge further ordered those petitioners to pay the son, from May 11, 1973, until his 23d birthday, unless his status as student terminated earlier, the sum of $137 a week, being 162/3 percent of the average weekly wage of the deceased. Appeals from that order were taken to the Benefits Review Board. The board sustained the decision of the administrative law judge and these petitions for review followed. Joining Geo Control and New Hampshire Insurance Co. in petitioning for review is the Director, Office of Workmen's Compensation Programs, United States Department of Labor.
 
 
 5
 Under the Act, compensation for death is provided by 33 U.S.C. § 909. Compensation for disability is covered by §§ 906 and 908. All three of these sections were substantially amended in 1972 to give disabled persons and survivors increased benefits and protection against continuing inflation. A problem in statutory construction is presented by the contention that the provisions for disability and those for death, as amended in 1972, are inconsistent with each other.
 
 
 6
 Prior to the amendments, § 908(a) and (b) provided for total disability payments of 662/3 percent of the worker's average weekly wage during the course of disability.[2] Section 906(b) provided limitations on the disability payments: a maximum of $70 and a minimum of $18. With respect to death benefits § 909(b) of the Act provided surviving spouses with benefits during widowhood or dependency amounting to 35 percent of the average weekly wage, plus 15 percent for each surviving minor child, with the total not to exceed 662/3 percent of such wages. Section 909(e) provided maximum and minimum compensation by setting limits on the weekly wage used to calculate the benefits:
 
 
 7
 "In computing death benefits the average weekly wages of the deceased shall be considered to have been not more than $105 nor less than $27 but the total weekly compensation shall not exceed the weekly wages of the deceased."
 
 
 8
 33 U.S.C. § 909(e).
 
 
 9
 The 1972 amendments made no change in the disability payments provided by § 908(a) and (b). The whole basis for the limitations imposed by § 906(b) on compensation for disability was changed, however. Instead of fixing a dollar maximum and minimum, limitations were fixed by reference to the national average weekly wage. Section 906(b)(2) fixed the minimum for total disability at not less than 50 percent of the national average (or, if it be a lesser amount, the employee's average weekly wage). Section 906(b)(1) provided a maximum for disability ultimately reaching 200 percent of the national average by October 1, 1975, but gradually attaining that figure by annual increases commencing at 125 percent during the period ending September 30, 1973. The manner in which the applicable national average weekly wage was to be determined was set forth in § 906(b)(3), and the duty of making that determination was assigned to the Secretary of Labor.[3]
 
 
 10
 The section covering death benefits, § 909(b), was amended to increase the compensation to the surviving spouses to 50 percent of the deceased's average weekly wage and that of the minor children to 162/3 percent, but retained the 662/3 percent limit on the total amount payable. The section setting the minimum and maximum limitations, § 909(e), was amended to read:
 
 
 11
 "In computing death benefits the average weekly wages of the deceased shall be considered to have been not less than the applicable national average weekly wage as prescribed in section 906(b) of this title but the total weekly benefits shall not exceed the average weekly wages of the deceased."
 
 
 12
 33 U.S.C. § 909(e). It is the construction of that subsection with which we are concerned.
 
 
 13
 Taken literally, the amendment of the subsection does two things. First, consistently with the provisions for limitations on disability compensation in § 906(b)(1) and (2), the minimum compensation for death benefits was fixed by reference to the national average weekly wage instead of by specific dollar amounts as in the original Act. Second, unlike § 906(b), however, and unlike the original Act, while a minimum limitation on the average weekly wage was provided, no maximum was provided.[4]
 
 
 14
 The result is that for death compensation can be more liberal than for disability that should a disabled person die his widow could realize an increase in compensation over that received prior to death. As one court has commented, it puts "a premium on death" to provide "that a totally disabled employee, in need of continuing care, should be compensated less generously than the family of an employee who dies." Director, Office of Workers' Compensation Programs v. Boughman, 178 U.S.App.D.C.132, 135, 545 F.2d 210, 213 (1976).
 
 
 15
 The Director, Office of Workers' Compensation Programs, has taken the position since 1972 that to avoid this anomaly § 909(e) must be construed to incorporate the maximum limitations provided by § 906(b)(1). This is the position he took in this matter before the administrative law judge and the Benefits Review Board, and which both judge and board rejected.
 
 
 16
 In support of that position petitioners rely on certain instances in the Act and in legislative history in which employees and survivors are linked together in such a way as to suggest that certain provisions of the Act apply to both disability and death compensation.[5] These instances, having reference to language far from clear or precise, do not in our judgment cast light on the legislative intent.
 
 
 17
 The difficulty with petitioners' position is that on its face the language of § 909(e) is not ambiguous. Their position rests on an assumption that the choice of this unambiguous language by Congress, and its failure expressly to incorporate the maximum limitations of § 906(b)(1), was inadvertent that Congress had not meant to say what it had clearly said. The presumption to the contrary is not lightly to be overturned, and in our judgment petitioners have failed to meet their burden in this respect. Indeed, legislative history as recited at length in the 39-page Decision and Order of the administrative law judge in our view convincingly demonstrates that Congress was fully aware of what it was doing and that the absence of maximums in § 909 was not inadvertent.
 
 
 18
 From the outset, one of the controversial questions presented in connection with the amendment of the Act had to do with the elimination of the maximum limitations. Two bills were presented in the Senate: S. 2318 eliminated the maximum limits as to both disability and death benefits;[6] S. 525 increased the benefits but retained maximum limitations. Hearings, supra n. 6, at 15, 19. The two bills were vigorously debated, both on the floor of the Senate and by witnesses in Senate hearings. Representatives of labor testified at length in support of S. 2318 to the effect that it would "eliminate the artificial and totally unrealistic restrictions on benefit amounts." Hearings, supra n. 6, at 156-57. Time after time, senators and representatives speaking on the bills and witnesses testifying thereto pointed out that § 10(d) of S. 2318, amending § 909(e) of the Act, would eliminate the maximums on compensation (save the 662/3 percent of the deceased's actual average weekly wage). See Legislative History of the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972 (S. 2318, Public Law 92-576) prepared by the Subcomm. on Labor of the Comm. on Labor and Public Welfare, U.S. Senate, Dec. 1972. Time after time, the Senate Report and the House Report, in summarizing major provisions of the bill and in section-by-section analyses, pointed out this effect of § 10(d) of S. 2318.[7]
 
 
 19
 The Senate Report, in compliance with subsection 4 of Rule XXIX of the Standing Rules of the Senate, showed the changes in existing law made by the bill as follows, with existing law proposed to be omitted enclosed in brackets and new matter printed in italics:
 
 
 20
 "(e) In computing death benefits the average weekly wages of the deceased shall be considered to have been not (more than $105 nor) less than ($27) the applicable national average weekly wage as prescribed in section 6(b) but the total weekly (compensation) benefits shall not exceed the average weekly wages of the deceased."
 
 
 21
 S.Rep. No. 1125, supra n. 7, at 40. The House Report, in compliance with Rule XIII of the Rules of the House of Representatives, showed the change in § 9(e) as follows:
 
 
 22
 "(e) In computing death benefits the average weekly wages of the deceased shall be considered to have been not (more than $105 nor less than $27 but the total weekly compensation shall not exceed the weekly wages of the deceased) less than the applicable national average weekly wage as prescribed in section 6(b) but the total weekly benefits shall not exceed the average weekly wages of the deceased."
 
 
 23
 H.R.Rep. No. 1441, supra n. 7, at 37.
 
 
 24
 It is difficult to see how, in light of this history and the manner in which the extent of the amendment was graphically illustrated, it can be maintained that Congress was unaware of the fact that while maximum limitations were imposed as to disability benefits they were eliminated as to death benefits.
 
 
 25
 It is argued, however, that no matter what the record may show the result is so irrational that it simply cannot have been intended. We cannot agree. One may well believe that dispensing with maximum limitations in the case of death benefits while retaining them in the case of disability is not the wisest legislative choice. As a choice, however, it clearly has received recognition and it does appear to have its advocates, and thus would seem to be entitled to the respect regularly accorded to a course legislatively chosen. As quoted by the administrative law judge, a report of the National Commission on Workmen's Compensation Laws, while favoring equality of benefits, recognizes that arguments have been advanced in favor of dispensing with maximum limitations in the case of death while retaining them for disability. The argument is to the effect that any limitation is undesirable, that reasons for imposing such limits in the case of disability (other than economy) do not exist in the case of death, and that the cost of fully compensating for death would be relatively small.[8] See The Report of the National Commission on State Workmen's Compensation Laws, at 71 (1972). The legislative choice thus can be read as a compromise with the course sought by representatives of labor: the elimination of maximum limits across the board.
 
 
 26
 Finally we note that had Congress intended death benefits to have the same limitations as disability benefits it would have been extremely simple to make the limitations provisions applicable to both. Instead Congress deliberately chose to compute limitations in the two cases by entirely different methods. For disability the limitations of § 906(b)(1) and (3) are imposed directly upon the compensation awarded. For death the limitation of § 909(e) is imposed upon the figure from which compensation is to be computed.
 
 
 27
 This choice of Congress to fix limitations in the two cases by different language and different methods actually serves to extend the advantage of death over disability beyond that realized from the elimination of maximum limitations. By the manner in which minimum limitations respectively are fixed, death benefits (in a case where the deceased is survived by a spouse and one or more children) have been rendered superior to disability benefits as to some employees (those whose average weekly wages are less than the national average but greater than one half the national average).[9]
 
 
 28
 If we are to bring disability and death benefits into a state of consistency we must, then, do more rewriting of § 909(e) than simply incorporating into it a form of the phase-in of § 906(b)(1). We must also rewrite the minimum limitations.
 
 
 29
 This course we reject. Where Congress has chosen to articulate limitations in the two cases by wholly different language, establishing different methods for computation, we find little rational persuasion in an argument that it must nevertheless have intended the results to be the same.
 
 
 30
 We conclude that petitioners have failed to meet their burden of establishing that Congress did not knowingly and intentionally eliminate the maximum limitations on death benefits in § 909(e). We must respectfully disagree with two decisions rejecting the decision of the Benefits Review Board in this matter and holding in accordance with the views of the Director.[10]
 
 
 31
 The judgment of the Benefits Review Board is affirmed.
 
 
 
 *
 Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 The Act, 33 U.S.C. §§ 901, et seq., provides certain defined workers with compensation for disability and death suffered in the course of their employment. Section 919 provides for hearings on claims for compensation to be conducted by administrative law judges. Section 921(b) establishes a Benefits Review Board, authorized to hear and determine appeals from orders entered by administrative law judges. Section 921(c) provides for judicial review by the courts of appeals of orders of the Benefits Review Board
 
 
 [2]
 In an effort to simplify an extremely complex problem of statutory construction, irrelevant detail, elaboration and exceptions are ignored, and the statute and statutory scheme are discussed in general terms
 
 
 [3]
 Section 906(b), as amended in 1972, states:
 "(b)(1) Except as provided in subsection (c) of this section, compensation for disability shall not exceed the following percentages of the applicable national average weekly wage as determined by the Secretary under paragraph (3):
 (A) 125 per centum or $167, whichever is greater, during the period ending September 30, 1973.
 (B) 150 per centum during the period beginning October 1, 1973, and ending September 30, 1974.
 (C) 175 per centum during the period beginning October 1, 1974, and ending September 30, 1975.
 (D) 200 per centum beginning October 1, 1975.
 (2) Compensation for total disability shall not be less than 50 per centum of the applicable national average weekly wage determined by the Secretary under paragraph (3), except that if the employee's average weekly wages as computed under section 910 of this title are less than 50 per centum of such national average weekly wage, he shall receive his average weekly wages as compensation for total disability.
 (3) As soon as practicable after June 30 of each year, and in any event prior to October 1 of such year, the Secretary shall determine the national average weekly wage for the three consecutive calendar quarters ending June 30. Such determination shall be the applicable national average weekly wage for the period beginning with October 1 of that year and ending with September 30 of the next year. The initial determination under this paragraph shall be made as soon as practicable after October 27, 1972."
 
 
 [4]
 There still are limits on compensation but they are only those in § 909(b), (c) and (d), which provide that "the total amount payable shall in no case exceed 662/3 per centum of such wages," and that in § 909(e), which provides that where the national average weekly wage is used to calculate the compensation, the compensation may not exceed the weekly wage of the deceased, and thus places a maximum on the minimum compensation. (The appropriate percent of the national average weekly wage, which is to operate as a minimum, cannot exceed the actual weekly wage.)
 
 
 [5]
 First, they refer to § 906(d), which reads:
 "Determinations under this subsection with respect to a period shall apply to employees or survivors currently receiving compensation for permanent total disability or death benefits during such period, as well as those newly awarded compensation during such period."
 We read the "determinations" there mentioned as having reference to those provided for by § 906(b)(3) (see n. 3) determinations by the Secretary of the applicable national average weekly wage. These determinations are not confined to cases of disability. The amendment of § 909(e) specifically embraced them by providing, as the minimum death benefit, a percent of "the national average weekly wage as prescribed in section 906(b) of this title * * *."
 As for § 906(d), all it says is that the Secretary's determination of national average weekly wages with respect to a certain period shall not only apply to those who first begin receiving compensation during that period, but shall also apply to those who are already receiving benefits. This provision rationally relates to those receiving death, as well as disability, compensation. We do not regard as significant the fact that Congress chose to put the substance of this subsection, relating to both survivors and disabled employees, in a section that has principal reference to disability. Given the clear, limited meaning of § 906(d) it cannot be read as incorporating into § 909, dealing with death benefits, the limitations of § 906(b)(1), which refer specifically to compensation for disability.
 The director also relies on language appearing in both Senate and House Reports and in remarks of a senator from the floor of the Senate:
 "To the extent that employees receiving compensation for total permanent disability or survivors receiving death benefits receive less than the compensation they would receive if there were no phase in, their compensation is increased as the ceiling moves to 200%."
 The phase-in to which reference is made is the gradual annual increase from 125 percent to 200 percent of the national average provided by § 906(b)(1). The language thus suggests that the gradual increase in the maximum limitations provided by that subsection should apply to survivors as well as to disabled employees. This is, indeed, ambiguous. However, as we later discuss in the text of our opinion, as an indication of legislative intent it is overwhelmingly outweighed by the contrary purport of the legislative history as a whole.
 
 
 [6]
 Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972: Hearings Before the Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare on S. 2318, S. 525, and S. 1547, 92d Cong., 2d Sess. 6, 8 (hereinafter cited as Hearings )
 
 
 [7]
 S.Rep. No. 1125, 92d Cong., 2d Sess. 6, 22 (1972); H.R.Rep. No. 1441, 92d Cong., 2d Sess. 4, 19, reprinted in (1972) U.S.Code Cong. & Admin.News, p. 4698 at 4701, 4716. As one example, the section-by-section description of the amendment in the House Report states:
 "Subsection (d) of this section amends section 9(e) of the Act, eliminating the dollar minimum and maximum set out under persent law for the average weekly wages of the deceased to be used in computing death benefits. The minimum substituted by this amendment is the applicable national average weekly wage as prescribed in section 6(b) of the Act, except that the total weekly benefits may not exceed the actual average weekly wages of the deceased."
 H.R.Rep. No. 1441, at 19, U.S.Code Cong. & Admin.News 1972, p. 4716.
 
 
 [8]
 The portion of the report to which the administrative law judge refers states:
 "Work-related deaths account for less than one percent of all workmen's compensation claims and less than 10 percent of all benefits. As the ultimate tragedy, work-related death deserves full compensation. The infrequency of death claims permits payment of substantial death benefits at a relatively small cost in the total budget of a modern workmen's compensation program.
 * * * In contrast to workers with temporary or permanent disabilities, the living expenses of the deceased no longer take a share of the family budget. This reduction in family needs suggests that the proportion of wages to be replaced should be less in death cases than in total disability cases. However, one reason why disability benefits replace less than 100 percent of wage loss is the theory that the injured worker needs an economic incentive to return to work. For the dead, there are no motivational problems, which suggests that replacement of more than the normal 662/3 percent of lost wages is appropriate."
 The Report of the National Commission on State Workmen's Compensation Laws, at 71 (1972).
 
 
 [9]
 The following examples indicate how the provisions governing minimum compensation for death and disability differ in hypothetical calculations:
 If we assume the Secretary has determined that the applicable national average weekly wage is $100, the compensation for an employee whose actual average weekly wage was $60 would be determined as follows:
 
 
 [1]
 Total Disability Benefits
 Under § 908(a) the employee would normally receive 662/3 percent of his average weekly wage, or $40. However, § 906(b)(2) states that the minimum compensation shall be 50 percent of the national average weekly wage, or $50. An employee in this situation would receive $50 compensation for total disability.
 
 
 [2]
 Death Benefits
 Under § 909(b), if, for example, the employee is survived by a widow or widower and one or more children, the total amount payable is 662/3 percent of the average weekly wage of the deceased, or $40. However, § 909(e) states that where the average weekly wage is less than the national average weekly wage, the national average should be used in place of the employee's actual average, and here we should take 662/3 percent of $100, or $66.66. § 909(e) then limits this minimum compensation to the actual average weekly wage, so the survivors would receive $60 compensation.
 Making these same assumptions, the minimum compensation calculations for employees with average weekly wages greater than half the national average weekly wage and less than the national average weekly wage result in greater compensation for death than disability, as the following chart indicates:
 Employee's Death Total
Nat'l. Avg. Avg. Benefits Disability
----------- ---------- -------- ----------
 $100 $100 $66.66 $66.66
 100 99 66.66 66.00
 100 75 66.66 50.00
 100 60 60.00 50.00
 100 51 51.00 50.00
 100 50 50.00 50.00
 
 
 [10]
 Director, Office of Workmen's Compensation Programs v. Boughman, 178 U.S.App.D.C. 132, 545 F.2d 210 (1976); Director, Office of Workmen's Compensation Programs v. O'Keefe, 545 F.2d 337 (3d Cir. 1976)