WIEN AIR ALASKA and Underwriters Adjusting Company, Appellants, Cross-Appellees,

v.

Joyce ARANT, Surviving Wife, and Jack and Jay Arant, Minor Children of William Arant, Deceased, Appellees, Cross-Appellants.

Nos. 3620, 3717.

Supreme Court of Alaska.

Feb. 9, 1979.

As Modified on Denial of Rehearing April 6, 1979.

Alan Sherry of Merdes, Schaible, Staley & DeLisio, Anchorage, for appellants, cross-appellees.

Arden E. Page of Burr, Pease & Kurtz, Inc., Anchorage, for appellees, cross-appellants.

Randall J. Weddle, Faulkner, Banfield, Doogan & Holmes, Juneau, Alaska, for amicus curiae Alaska Trucking Assn., Inc.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

BOOCHEVER, Chief Justice.

This case involves a claim by the wife and two children of a deceased worker for an increase in death benefit payments. We affirm the determination of the Workmen's Compensation Board and the Superior Court's decision that claimants are entitled to an increase. We hold that the formula set forth in AS 23.30.145(a) governs the attorney fee award for the Board proceeding and remand to the Board for a new determination of attorney's fees. We instruct the Superior Court to redetermine reasonable attorney's fees for the appeal, taking into account the Board's fee award.

The facts are little in dispute. William Arant was employed as a pilot by Wien Air Alaska at an average weekly wage of about $1,000.00.[1] On August 30, 1975, he died in a work-related plane crash. His wife, Joyce Arant, and his two dependent children (hereinafter the Arants) started receiving workers' compensation payments of $198.40 a week eleven days after the accident.[2]

On February 13, 1976, the Workmen's Compensation Board received application for adjustment of claim from the Arants, requesting an increase in compensation payments to $357.59 per week. Wien denied that such an increase was due. After a hearing, the Board, applying the table of maximum benefits in AS 23.30.175(a), ruled

1. Initially, there was a disagreement over the $1,000.00 figure, but Wien no longer seems to contest it. The exact weekly salary of Mr. Arant is not material to resolution of this dispute.

2. Wien Air Alaska and Underwriters Adjusting Company are jointly contesting the Arants' claim. We refer to both these parties as Wien.

that Wien should increase payments to $357.59 and awarded the then-successful Arant claimants $500.00 partial reimbursement for claimed attorney's fees.[3]

Wien appealed the Board's decision to the Superior Court, urging that the increasing maximums in AS 23.30.175 did not apply to death benefits both as a matter of statutory construction and constitutional compulsion; Wien claimed impairment of contract and denial of due process and equal protection.[4] Alaska Air Carriers, as amicus curiae, argued against the increase on statutory grounds only. The Arants cross-appealed the award of attorney's fees, arguing that the statutory minimum fee schedule in AS 23.30.145(a) applied because the employer had controverted the claim.

The Superior Court, relying on decisions interpreting the federal Longshoremen's and Harbor Workers' Compensation Act, ruled that Alaska's statute, consistent with the constitution, provided for the increase in payments from $198.40 to $357.59. The court referred the $500.00 award of attorney's fees back to the Board "to conduct a hearing to establish reasonable attorney's fees" for the legal proceedings before it. Pursuant to Appellate Rule 29, the claimants made a motion for attorney's fees and costs for the appeal, and the court awarded $750.00 for attorney's fees and $33.37 for costs.

Wien timely noticed appeal and, before this court, renews only the statutory and the contract clause arguments. The Arants' cross-appeal argues the inadequacy of both the $500.00 award of attorney's fees for the Board proceeding and the $750.00 award for the appeal to the Superior Court.

## I. THE INCREASE IN COMPENSATION PAYMENTS

A description of the structure of Alaska's workers' compensation statute is essential in order to understand the Arants' claim for an increase in compensation payments. Alaska has a two-step process for calculating compensation payments. One, the statute specifies a per cent of the deceased or injured employee's average weekly wage [5] to which claimants are entitled. Two, the statute specifies a maximum limitation on the weekly award. If the result of the step one calculation, the dollar amount which represents the per cent of the worker's wage, is greater than the maximum limitation, the claimant receives only the maximum limitation.

AS 23.30.215 lays out the basic structure for death benefits. AS 23.30.215(a) indicates the percentage of the deceased employee's wages which specified claimants receive; the statute in effect in 1975, when Arant was killed, provided for an award of 85 per cent of the deceased employee's average weekly wages to a widow and two children.[6] AS 23.30.215(b) tells how to cal-

---

3. Plaintiffs requested $6,033.75 in attorney's fees for 80.45 hours of legal work at $75.00 per hour, which Wien objected to as excessive.

4. Wien also argued that if an increase was due, it should be paid by the general funds pursuant to AS 23.30.172. *See* note 41 *infra.* The Superior Court required Wien to pay the increase, and Wien has not reintroduced the special fund argument.

5. When we mention the injured worker's wage, we will generally mean his or her average weekly wage.

6. The death benefit rates at the time of Mr. Arant's death were:
 *Compensation for death.* (a) If the injury causes death, the compensation is known as

a death benefit and is payable in the following amounts to or for the benefit of the following persons:

(2) if there is a widow or widower or a child or children of the deceased, the following percentages of the average weekly wages of the deceased:
 (A) 66⅔ per cent for the widow or widower with no children;
 (B) 50 per cent for the widow or widower with one child and 20 per cent for the child;
 *(C) 50 per cent for the widow or widower with two children and 35 per cent divided equally among the children;*
 (D) 50 per cent for the widow or widower with three or more children and 40 per cent divided equally among the children;

culate the maximum limitation. At the time of Arant's death in 1975, the statutory language provided:

> In computing death benefits the average weekly wage of the deceased shall be . . . . subject to the same weekly maximum limitation in the aggregate as temporary total disability compensation, but the total weekly compensation may not be less than $45 for a widow or widower nor less than $15 weekly to a child or $30 for children.[7]

The maximum limitation on temporary total disability payments is found in AS 23.-30.175, which provided at the time of Arant's death:

> Rates of compensation. (a) The weekly rate of compensation for disability or death may not exceed the percentage of the state average weekly wage as determined by the table contained in this subsection and may not be less than $65 a week. If the employee's average weekly

wages, as computed under § 220 of this chapter, are less than $65 a week, he shall receive as compensation for his disability his average weekly wages.

| On | The Rate Shall Be |
| --- | --- |
| July 1, 1975 | 80 per cent of the state's average weekly wage |
| January 1, 1976 | 100 per cent of the state's average weekly wage |
| January 1, 1977 | 133.3 per cent of the state's average weekly wage |
| January 1, 1979 | 166.6 per cent of the state's average weekly wage |
| January 1, 1981 | 200 per cent of the state's average weekly wage.[8] |

AS 23.30.175 thus determines the maximum limitation on death and disability payments[9] by reference to increasing percentages of the state's average weekly wage. The statute has specified this method of calculation since 1975. Before 1975, the maximum limitation was a flat dollar amount.[10] This recent structural change in

---

> (E) 66⅔ per cent for an only child when there is no widow or widower;
> (F) 33⅓ per cent for each child if there are two children and no widow or widower;
> (G) 66⅔ per cent, divided equally, if there are three or more children and no widow or widower;
> (3) if the widow or widower remarries, she or he is entitled to two years compensation in one sum;

Ch. 83, §§ 7–12, SLA 1975 (emphasis added) (current version at AS 23.30.215(a)). Amendments in 1977 decreased death benefits for a widow with two or more children to 66⅔ per cent of the deceased employee's wage. Ch. 75, § 5, SLA 1977 (codified at AS 23.30.-215(a)(2)(C)). These amendments included a new provision that, with a few exceptions, automatically phases out death benefits over ten years. Ch. 75, § 8, SLA 1977 (codified at AS 23.30.215(f)–(g)).

**7.** Ch. 83, § 12, SLA 1975 (emphasis added) (current version at AS 23.30.215(b)). AS 23.-30.215(b) has undergone minor changes which we indicate at note 44 *infra*.

**8.** Ch. 83, § 2, SLA 1975 (emphasis added) (current version at AS 23.30.175(a)). The main difference between the maximum limitation in 1975 and the current version is the change:

> The weekly rate of compensation for disability or death for a recipient residing in Alaska may not exceed the percentage of the Alaska average weekly wage *in effect on the date of injury* as determined by the table contained in this subsection . . . . .

AS 23.30.175(a) (emphasis added). We discuss the implications of this change for the instant case in note 15 *infra*.

**9.** AS 23.30.175 contains the maximum limitation on death benefits because of two things: its own language ("the weekly rate of compensation for disability *or death* (emphasis added)) and by the cross-reference from AS 23.30.-215(b). Before 1975, AS 23.30.175 referred only to "[c]ompensation for temporary disability, permanent partial disability or permanent total disability . . .," making no mention of death benefits. Ch. 52, § 1, SLA 1974. *Compare* ch. 10, § 3, SLA 1972. The only way one knew that AS 23.30.175 was also the maximum for death benefits was by the cross-reference from AS 23.30.215(b).

**10.** In 1968, the maximum temporary total disability benefit in AS 23.30.175(a) increased from $100.00 to $113.00; in 1970, it increased to $127.00; in 1972, it increased to $175.00. Ch. 206, § 1, SLA 1968; ch. 228, § 1, SLA 1970; ch. 10, § 3, SLA 1972. The maximum payable death benefit increased by those same amounts

the maximum limitation on death benefits is the heart of this controversy.

Wien admits its obligation to pay weekly payments of $198.40. This figure results from the calculation of the first figure in the AS 23.30.175(a) maximum rate table, 80 per cent of Alaska's average weekly wage. Wien contends that the 80 per cent figure is the maximum limitation for claims arising from July 1, 1975, to January 1, 1976. This would mean claims occurring between January 1, 1976, and January 1, 1977, are subject to a maximum limitation of 100 per cent of the state's average weekly wage; claims occurring between January 1, 1977, and January 1, 1979, are subject to a maximum limitation of 133.3 per cent of the state wage; and so forth. Since Mr. Arant died on August 30, 1975, Wien argues that the maximum limitation on the Arants' claim is fixed forever at 80 per cent of the state's average weekly wage.

The Arants' position implies that the entire table governs their claim, not just the first line. They claim entitlement to payments up to the maximum limitation in the right-hand column, as of the date indicated in the left-hand column. This means that as of January 1, 1976, the limitation on their death compensation payments would rise to 100 per cent of the state's average weekly wage; after January 1, 1977, the limitation would rise to 133.3 per cent of the state wage; and so forth.

 This dispute requires construction of the workers' compensation statute. The court in *Hood v. State, Workmen's Compensation Board,* 574 P.2d 811, 813 (Alaska 1978), enunciated the standard of review for such a question:

> [Where] the issue to be resolved turns on statutory interpretation rather than formulation of fundamental policy involving particularized expertise of administrative personnel, . . . we shall independently consider the meaning of the statute.[11]

The meaning of a statutory provision is determined by the language of the particular provision construed in light of the purpose of the whole instrument.[12]

 Wien's position requires that the dates in the left-hand column not only specify when the new rates will apply but also what claims the new rates shall apply to. The Arants' position requires that the dates in the left-hand column be construed to serve a timing function only and that the effective date of the act, May 22, 1975,[13] be construed to indicate that all claims arising thereafter shall be subject to the new series of maximum limitations. The language of the provision, the purpose of workers' compensation, and the purpose of the new maximum rate table all coincide in favor of the Arants' position.[14] We hold that all claims arising after May 22, 1975 are governed by the increasing rates in the maximum table in AS 23.30.175(a).[15]

since AS 23.30.215(b) tied the maximum for death benefits to the maximum for disability benefits.

11. *Accord, Union Oil Co. of Cal. v. Dept. of Revenue,* 560 P.2d 21, 23 (Alaska 1977); *Alaska Pub. Util. Comm'n v. Municipality of Anchorage,* 555 P.2d 262, 266 (Alaska 1976); *State v. Aleut Corp.,* 541 P.2d 730, 736–37 (Alaska 1975); *Mukluk Freight Lines, Inc. v. Nabors Alaska Drilling, Inc.,* 516 P.2d 408, 412 (Alaska 1973); *Swindel v. Kelly,* 499 P.2d 291, 298 (Alaska 1972); *Kelly v. Zamarello,* 486 P.2d 906, 916 (Alaska 1971); *see* 4 K. Davis, Administrative Law § 30.14, at 269 (1958).

12. *Hotel Employees Local 879 v. Thomas,* 551 P.2d 942, 944 (Alaska 1976); *State v. City of Anchorage,* 513 P.2d 1104, 1110 (Alaska 1973);

*State v. American Can Co.,* 362 P.2d 291, 296 (Alaska 1961); *see* 2A C. Sands, Sutherland Statutory Construction § 45.09 (4th ed. 1973).

13. Ch. 83, § 13, SLA 1975.

14. More difficult questions of statutory interpretation arise when the literal interpretation of a statutory provision is at odds with an interpretation that arguably furthers the statute's purpose.

15. Our holding is that the increasing percentages in AS 23.30.175(a) apply to all claims arising after May 22, 1975. The increasing percentage is computed on the basis of Alaska's average weekly wage. Since the average weekly wage will change with passage of time, this raises a question as to *which* year's aver-

The language of the section favors the Arants' position. The maximum table seems to phase in a new maximum rate for all claimants. AS 23.30.175(a) does *not* have a third column, which might read as follows:

| On | The Rate Shall Be | For All Claims |
|---|---|---|
| July 1, 1975 | 80 per cent of the state's average weekly wage | arising after July 1, 1975, and before January 1, 1976 |
| January 1, 1976 | 100 percent of the state's average weekly wage | arising after January 1, 1976, and prior to January 1, 1977 |

---

Had the legislature intended Wien's construction, it is likely they would have expressly so indicated. The effective date of the act is the natural date for establishing when the new rates go into effect.

■ The purpose of workers' compensation is to compensate the victims of work-rated injury for a part of their economic loss, measured by the wage loss to the worker or the surviving family.[16] Congress, as part of the Occupational Safety and Health Act,[17] created the National Commission on State Workmen's Compensation Laws "to determine if such laws provide an adequate, prompt, and equitable system of compensation for injury or death arising

age weekly wage controls the computation of the percentage. The percentage increases but does the base also?

The maximum limitation table in effect at the time of Mr. Arant's death stated:

The weekly rate of compensation for disability or death may not exceed the percentage of the state average weekly wage as determined by the table contained in this subsection . . . .

Ch. 83, § 2, SLA 1975. The legislature amended the statute, effective August 31, 1977, to read:

The weekly rate of compensation for disability or death for a recipient residing in Alaska may not exceed the percentage of the Alaska average weekly wage *in effect on the date of injury* as determined by the table contained in this subsection . . . .

Ch. 75, § 3, SLA 1977 (emphasis added) (codified at AS 23.30.175(a)).

One position is that not only the *percentage* of the average weekly wage increases, but that the *average weekly wage* also changes, periodically until 1981, with fluctuations in the state's average weekly wage. Thus, if the state's average weekly wage for the first period of the maximum rate table was $200.00, the maximum computation allowable for that period would be 80 per cent of $200.00, or $160.00. If the state's average weekly wage in 1976 were $300.00, the maximum compensation for all claims would be the increased percentage allowed by the statute, 100 per cent of that increased average wage, or $300.00 per week, etc. A person injured after 1977 could not claim this. The 1977 amendment still gives recipients an increasing percentage, but an increasing percentage relative to the same amount, *i. e.*, the weekly wage in effect at the date of injury. Thus, using the same hypothetical figures, the limitation would rise according to the new increasing percentage, 100 per cent, for all claims, but relative to the same average weekly wage, *i. e.*, 100 per cent of $200.00, or $200.00 for injuries occurring during the first period of the table.

Whether the 1977 amendment was intended to clarify or change the prior law is unclear. If it was intended as a clarification, it governs the maximum limitation on all awards. If it was a change in policy, it governs the limitation only for injuries occurring after August 31, 1977, the effective date of the amendment. This issue as to the base wage was not addressed by the parties, and we do not decide it.

The record indicates that the Workmen's Compensation Board assumed, for the Arants' award, that the base increases as well as the percentage. The Board apparently used $248.00 as the base wage for the first payment period ($198.40 is 80 per cent of $248.00) and $357.59 as the base wage for the second payment period. Despite this construction by the Board, Wien has never argued that the base wage should not increase above the state average wage as of the date of injury.

16. *Vetter v. Alaska Workmen's Comp. Bd.,* 524 P.2d 264, 266 (Alaska 1974); *Hewing v. Alaska Workmen's Comp. Bd.,* 512 P.2d 896, 900 (Alaska 1973); 2 A. Larson, Workmen's Compensation Law § 57.10, at 10–1 to 10–2 (1976); Division of Research, Alaska Legislative Affairs Agency, Workers' Compensation: The Feasibility of Establishing a State Fund 1 (February 1977) [hereinafter cited as Alaska Workers' Compensation Report].

17. Pub.L.No.91–596, 84 Stat. 1590–1616, 29 U.S.C.A. §§ 651–78.

out of or in the course of employment." [18] The Commission's report in 1972 found that "[t]he inescapable conclusion is that State workmen's compensation laws in general are inadequate and inequitable." [19] It made eighty-four specific recommendations, nineteen of which were designated as "essential" for adequate compensation systems. [20] Although there was some sentiment that workers' compensation should be immediately federalized, [21] the Commission urged that the progress of the states in implementing the essential recommendations be evaluated on July 1, 1975; and if necessary, Congress should at that time guarantee compliance with the essential recommendations. [22]

The essential recommendations included an increase in the maximum limitation on death benefit to 200 per cent of the statewide average weekly wage achieved through a phase-in. [23] The Council of State Governments stated:

> The limited benefits payable in the case of death under state workmen's compensation laws were an important consideration in causing the National Commission to find that generally workmen's compensation laws provided inadequate benefits. [24]

18. Occupational Health and Safety Act § 27, 29 U.S.C.A. § 676(a)(2); *see also Director, Office of Workers' Comp. Programs v. Boughman,* 178 U.S.App.D.C. 132, 137 n.15, 545 F.2d 210, 215 n.15 (1976); Alaska Workers' Compensation Report, *supra* note 16, at 6; *Introductory Comments,* Advisory Committee on Workmen's Compensation Laws, Council of State Governments, *Workmen's Compensation and Rehabilitation Law* at ix (rev. ed. July 1974). The Congressional findings which motivated the establishment of the Commission were that:

> (A) the vast majority of American workers, and their families, are dependent on workmen's compensation for their basic economic security in the event such workers suffer disabling injury or death in the course of their employment . . . ; and
> (B) in recent years serious questions have been raised concerning the fairness and adequacy of present workmen's compensation laws in the light of . . . increases in the general level of wages and the cost of living.

Occupational Health and Safety Act § 27, 29 U.S.C.A. § 676(a)(1).

19. Alaska Workers' Compensation Report, *supra* note 16, at 6, *quoting* The Report of the National Commission on State Workmen's Compensation Laws (July 1972).

20. Alaska Workers' Compensation Report, *supra* note 16, at 6, *referring to* The Report of the National Commission on State Workmen's Compensation Laws (July 1972); *Introductory Comments,* Advisory Committee on Workmen's Compensation Laws, Council of State Governments, *Workmen's Compensation and Rehabilitation Law* at ix (rev. ed. July 1974).

21. Alaska Workers' Compensation Report, *supra* note 16, at 6; Crihfield, *Foreward* to Advisory Committee on Workmen's Compensation Laws, Council of State Governments, *Workmen's Compensation: A Challenge to the States* at vi (February 1973).

22. *Introductory Comments,* Advisory Committee on Workmen's Compensation Laws, Council of State Governments, *Workmen's Compensation and Rehabilitation Law* at ix (rev. ed. July 1974).

23. In *Director, Office of Workers' Comp. Programs v. O'Keefe,* 545 F.2d 337 (3d Cir. 1976), the court stated:

> [T]he National Commission recognized that "the arguments . . . concerning the maximum weekly benefits for temporary and permanent disabilities are equally applicable for death cases." The Report of the National Commission on State Workmen's Compensation Laws 71 (1972). Therefore, *the Commission recommended that death benefits, like disability benefits, be limited after a phase-in period to "at least 200 per cent of the State's average weekly wage." Id.* at 72.

545 F.2d at 347 (emphasis added). The court in *Director, Office of Workers' Comp. Programs v. Boughman,* 178 U.S.App.D.C. 132, 545 F.2d 210 (1976), characterized the Commission's recommendations:

> It is revealing, therefore, that the Commission not only recommended the same "Maximum Weekly Benefit"—*phased in to 200% of the statewide average weekly wage*—in death cases as in disability cases, but also noted that exactly the same arguments supported having such a maximum in both types of cases.

At 137 n.15, 545 F.2d at 215 n.15 (Skelly Wright, J.) (emphasis added, citation omitted). *But see Director, Office of Workers' Comp. Programs v. Rasmussen,* 567 F.2d 1385 (9th Cir. 1978).

24. Advisory Committee on Workmen's Compensation Laws, Council of State Governments, *Workmen's Compensation: A Challenge to the States* 13 (February 1973). The Court of Appeals for the District of Columbia termed the recommendations for a new phased-in maxi-

Alaska and other states enacted many of the Commission's recommendations, including the increases in maximum benefit limitations.[25] The impetus for action probably came both from the shortcomings revealed by the Commission's report and from the states' desire to avoid federal takeover of the program.[26]

Alaska's situation illustrates why the Commission found workers' compensation "inadequate and inequitable." In 1975, before the new maximum rates went into effect, the maximum limitation on compensation payments was $175.00,[27] but in Alaska, the average weekly wage was $248.00.[28] Thus, prior to the 1975 amendments, the statute theoretically granted recipients of death benefits 85 per cent of the deceased worker's wage,[29] but most claimants instead received the maximum limitation. The maximum limitations on death benefits frustrated achievement of the purpose of workers' compensation to secure adequate compensation.

Wien's position would leave many workers inadequately compensated. Claimants such as the Arants would be frozen at an amount that did not achieve the purposes of the statute. Really, no workers would receive a phased-in increase; each successive group of workers would be subject to different maximum rates. Wien's position makes the phase-in a device to *limit* the number of claimants who would have the benefit of an adequate maximum limitation.

The Arants' position accords with the origin of the new rate table and with the purpose of workers' compensation. In AS 23.30.175(a), the legislature adopted the Commission's recommendations for an increase, phasing in an adequate maximum rate for all workers. The large increase restores protection to the worker, while the phase-in protects the employer from the adverse impact that a large, one-step increase might cause.

In response to the National Commission's report, Congress in 1972 enacted amendments fixing new maximum limitations on death and disability payments in the Longshoremen's and Harbor Workers' Compen-

mum limitation among "the most significant" of the Commission's recommendations. *Director, Office of Workers' Comp. Programs v. Boughman,* 178 U.S.App.D.C. at 137 n.15, 545 F.2d at 215 n.15.

25. By 1975, at least ten states based a maximum limitation on death benefits upon a percentage of the state's weekly wage. *Director, Office of Workers' Comp. Programs v. Boughman,* 178 U.S.App.D.C. 132, 135, 545 F.2d 210, 213 (1976). A February 1977 report of the Alaska Legislative Affairs Agency observed: "State legislation in recent years has been strongly influenced by the work of the 1971–72 National Commission on State Workmen's Compensation Laws." Alaska Workers' Compensation Report, *supra* note 16, at 6. That report also noted: "The development of workmen's compensation in Alaska has generally conformed to the trend which has prevailed in other states." *Id.* at 10.

26. As the Council of State Governments rather tactfully noted: "[I]t behooves the States to bend sincere efforts toward modernizing their workmen's compensation programs." Advisory Committee on Workmen's Compensation Laws, Council of State Governments, *Workmen's Compensation: A Challenge to the States* 1 (February 1973). It indicated that enactment of the nineteen essential recommen-

dations was "the surest way to preserve and strengthen the *state* system of workmen's compensation." *Id.* at 2 (emphasis added).

27. *See* ch. 52, § 1, SLA 1974 and ch. 10, § 3, SLA 1972.

28. This was Alaska's average weekly wage from October 1974 to June 1975. Statistics from the Workmen's Compensation Division, Department of Labor, State of Alaska. The Arants' first weekly payment was $198.40, which is 80 per cent of $248.00. This is because the first maximum limitation in the AS 23.30.175 table provides for 80 per cent of the state's average weekly wage, but the average weekly wage for that calculation was measured as of October 1974 to June 1975. Ch. 83, § 2, SLA 1975 (current version at AS 23.30.175(b)).

29. The statute fixing death benefits for a surviving spouse with two children at 85 per cent of the deceased worker's average weekly wage was in effect for about one year, from May 4, 1974 to May 22, 1975. Ch. 56, § 1, SLA 1974. Prior to the effective date of the 1974 amendments, death benefits for a surviving spouse and two children were fixed at 65 per cent of the deceased worker's wage. Ch. 99, § 3, SLA 1966.

sation Act,[30] similar to the maximums in AS 23.30.175(a).[31] The purpose of this legislation further supports the Arants' position. The House Committee Report states:

> The basic requirement of the Act is for the injured worker to receive 66⅔% of his average weekly wage. Historically this ⅔ requirement has been subject to an arbitrary limitation in order to protect against a high compensation payment for injuries to highly paid workers. As a result of the 12 year freeze on increasing benefits under this Act the present $70 maximum results in few workers receiving ⅔ of their average weekly wages and many workers receiving as low as 30% of their average weekly wage.
>
> [These amendments] provide that the maximum compensation for disability shall not exceed 200% of the national average weekly wage to be determined annually by the Secretary of Labor. The expectation is that a 200% maximum will enable approximately 90% of the work force covered by this Act to receive ⅔ of their average weekly wage. In order to ease the adjustment of these benefits which at a minimum will result in doubling the compensation payment for most covered workers, the bill provides a phase-in in four steps . . . .[32]

Wien asserts that the intent of one legislature does not determine the intent of another. Both Congress and the Alaska legislature, however, were responding to a similar factual situation: maximum limitations which cut off most compensation claims.[33] Both statutes were enacted in response to the critique of the National Commission and embodied its recommendations. The intent of another legislature facing a simi-

---

**30.** Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 906(b), *as amended by* Pub.L.No.92–576, 86 Stat. 1252, 33 U.S. C.A. § 906(b)(1) (1970 & Supp.1978). *See Director, Office of Workers' Comp. Programs v. O'Keefe*, 545 F.2d 337, 347 (3d Cir. 1976); *Director, Office of Workers' Comp. Programs v. Boughman*, 178 U.S.App.D.C. 132, 137 n.15, 545 F.2d 210, 215 n.15 (1976).

**31.** The maximum table in the federal Longshoremen's Act states:

> [C]ompensation *for disability* shall not exceed the following percentages of the applicable national average weekly wage as determined by the Secretary [of Labor] under paragraph (3):
>
> (A) 125 per centum or $167, whichever is greater, during the period ending September 30, 1973.
>
> (B) 150 per centum during the period beginning October 1, 1973, and ending September 30, 1974.
>
> (C) 175 per centum during the period beginning October 1, 1974, and ending September 30, 1975.
>
> (D) 200 per centum beginning October 1, 1975.

33 U.S.C.A. § 906(b)(1) (Supp.1978) (emphasis added).

Unlike the Alaska statute, the maximum limitation table in the federal act does not explicitly apply to death benefits. In two cases, employees argued that death benefits under the federal act had *no* maximum limitation. *Director, Office of Workers' Comp. Programs v. O'Keefe*, 545 F.2d 337 (3d Cir. 1976); *Director, Office of Workers' Comp. Programs v. Boughman*, 178 U.S.App.D.C. 132, 545 F.2d 210 (1976). Both courts found that Congress intended to limit death benefits in the same manner as disability payments. A contrary result was reached in *Director, Office of Workers' Comp. Programs v. Rasmussen*, 567 F.2d 1385, 1391 (9th Cir. 1978).

We have found no case in which a party argued that the maximum rate table in the Longshoremen's Act applies in the manner urged by Wien. This suggests the improbability of Wien's interpretation of this type of statutory table, since the federal maximum rates went into effect in 1972.

**32.** H.R.Rep.No.92–1441, 92d Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Admin. News, pp. 4698, 4700. Committee reports are oft-used aids in statutory interpretation. *E. g., Hafling v. Inlandboatmen's Union*, 585 P.2d 870, 874 (Alaska 1978); *Miller v. Monrean*, 507 P.2d 771, 776 & n.13 (Alaska 1973); C. Sands, 2A Sutherland Statutory Construction § 48.06 (4th ed. 1973); *see Starr v. Hagglund*, 374 P.2d 316, 319 & n.13 (Alaska 1962) (committee reports to constitutional convention used for constitutional interpretation).

**33.** Appellant argues that the situations are different because Congress did not enact any increase for 12 years prior to the 1972 Act. *See* text accompanying note 32 *infra*. The situations are essentially similar. Even though the Alaska legislature enacted periodic increases, the limitation still cut off most claims. The need for increased benefits was probably greater in Alaska than the need nationally because of dramatic pipeline-related wage increases in Alaska.

lar problem and enacting a similar statute is a long-accepted and helpful aid in statutory construction.[34] Further, in AS 23.30.-175, the Alaska legislature has specifically utilized the federal Longshoremen's Act.[35] In a number of instances, this court has referred to federal decisions construing provisions of the Longshoremen's Act which are similar to the Alaska Workmen's Compensation Act.[36]

Wien and amicus offer two alleged obstacles to the Arants' interpretation: AS 23.-30.172 and the impairment of contract clauses of the federal and Alaska constitutions. The mainstay of their argument is an interpretation of AS 23.30.172, which stated:

> *Benefit adjustments.* Benefits for temporary and permanent disability shall be calculated under this chapter according to currently existing benefit rates regardless of the benefit rates in existence at the time of the injury, unless this calculation would cause a decrease in the actual benefits receivable.[37]

The scope of this section was decreased in 1976,[38] and the section was eliminated entirely in 1977.[39] As originally drafted, one version of AS 23.30.172 read: "Benefits for temporary and permanent disability *or death* shall be calculated . . ." (emphasis added).[40] Wien argues that the elimination of the phrase "or death" from AS 23.30.172 means that AS 23.30.175 does not authorize the Arants' payments to rise beyond their initial level.

Wien's argument involves four analytical steps: the Arants' claim for increased death benefits is a claim for a retroactive increase in benefits; section 172 is the only section that provides for retroactive application of compensation rates; section 172 does not include death benefits; *therefore,* AS 23.-30.172 precludes application of the increasing maximum limitations in AS 23.30.175 to the Arants' death benefit payments. This argument is seriously flawed.

First, and foremost, the Arants do not seek a retroactive increase in benefits. The statute enacting the maximum rate table was passed and became effective on May 22, 1975, fully three months before Mr. Arant's death. Assuming, as Wien maintains,

34. *See* 2A C. Sands, Sutherland Statutory Construction §§ 52.01, 52.03 (4th ed. 1973). Such statutes are said to be "in pari materia," *i. e.,* as cut from the same cloth.

35. In 1976, the legislature changed AS 23.30.-175 so that a recipient of Alaska compensation payments who did not reside in Alaska would not receive percentages of *Alaska's* average weekly wage:

> For the purposes of determining the average weekly wage of a state other than Alaska, the commissioner shall adopt the average weekly wage as computed and published by the state agency responsible for administering the workmen's compensation laws of that state. *For those states in which no figure is published, the commissioner shall adopt the average weekly wage for that state as published by the United States Secretary of Labor for the purposes of the Longshoremen's and Harbor Workers' Compensation Act* . . . . .

Ch. 252, § 5, SLA 1976 (emphasis added) (codified at AS 23.30.175(c)).

36. *See Stafford v. Westchester Fire Ins. Co.,* 526 P.2d 37, 40 (Alaska 1974) (double recovery); *Hewing v. Alaska Workmen's Comp. Bd.,* 512 P.2d 896, 899 (Alaska 1973) (wage-earning capacity); *Barber v. New England Fish Co.,* 510 P.2d 806, 812 (Alaska 1973) (compensation is exclusive remedy). Other courts interpreting Alaska's worker compensation statute have also looked to the federal Longshoremen's Act. *See, Johnson v. Standard Oil Co. of Cal.,* 30 F.R.D. 329, 330 (D.Alaska 1962) (subrogation of claim by employer's assignment to insurance carrier).

37. Ch. 51, § 1, SLA 1974.

38. It was limited to temporary total disability cases which existed for more than two years and permanent total disability. The amendment made the section inapplicable to permanent partial disability. Ch. 252, § 3, SLA 1976.

39. Ch. 75, § 11, SLA 1977.

40. On February 20, 1974, two versions of this bill were introduced in the Senate and referred to the Labor and Management Committee. One version included death benefits, *see* S.B. 400, 8th Leg., 2d Sess. § 1 (1974). The other version did not, *see* S.B. 400 am., 8th Leg., 2d Sess. § 1 (1974). The reference library of the state legislature has, on microfilm, copies of all the bills which have been introduced.

that compensation rates irrevocably vest at the time of injury, the Arants' claim is that these increasing rates of compensation vested at the time of injury. We may assume that removal of death benefits from AS 23.30.172 meant that death benefits would not receive retroactive increases. Under this theory, all compensation claims from deaths which occurred before May 22, 1975, could not rise to the new maximums. Mr. Arant died after May 22, 1975.[41]

Second, Wien's interpretation of legislative intent is unreasonable. Neither Wien nor amicus point to any direct evidence for their interpretation of the rather exotic interplay between AS 23.30.172 and .175. Their inference of this relationship requires the following construction of events: in 1975, the legislature enacted a new method of calculating maximum limitations, explicitly used words applying the new limitation to death benefits, but, at the same time, intended that a 1974 amendment that doesn't even mention death benefits countermand the explicit language of the 1975 statute. Further, since AS 23.30.175 uses a new method for calculating maximum limitations, Wien credits the legislature with uncanny foresight to anticipate, in 1974, the new type of rate table it would adopt in 1975.

The substantive intent attributed by Wien to the legislature is that disability payments should gradually increase but that death benefits should not. This interpretation is inconsistent with the specific events that spawned the new rate structure. The National Commission's critique of workers' compensation maximum limitations applied with equal force to death and disability payments[42] and the legislature expressly included death benefits within the language of AS 23.30.175.

Finally, by Wien's logic, the increasing maximum rates in AS 23.30.175 no longer apply to disability payments. Wien and amicus maintain that any increase of a maximum limitation is a retroactive increase and that only AS 23.30.172 grants retroactive increases. AS 23.30.172, however, was repealed in 1977.[43] Wien's position means that the increasing maximum rates now do not even apply to disability payments since the necessary authority for the "retroactive" increases, AS 23.30.172, no longer exists.[44]

---

41. A recent compensation claim decision, *Hood v. State, Workmen's Comp. Bd.*, 574 P.2d 811 (Alaska 1978), required interpretation of AS 23.30.172. A worker who had lost a leg in 1973 sought the benefit of a 1975 rate increase. We held that AS 23.30.172 applied to workers with permanent partial disability and granted Hood the increase. The issue before the court was narrowed to the scope of retroactivity:

> [With respect to section 172,] it is clear that the legislature intended to give the act *a retroactive effect* so that we are concerned only with *the scope of its retroactive provisions.*

*Id.* at 815 (emphasis added). We termed Hood's claim retroactive: the injury was in 1973 and the increase occurred after his injury, in 1975. In *Hood*, we did not decide whether a retroactive increase in workers' compensation would impair obligation of contract because AS 23.30.172 (Ch. 51, § 2, SLA 1974) provided that "[f]unds needed to carry out the provisions of this section shall be appropriated from the general fund." 574 P.2d at 815–16 & 816 n.13. The employer did not have to pay any of the retroactive increase.

42. *See* page 358 and note 23 *supra*.

43. Ch. 75, § 11, SLA 1977.

44. While AS 23.30.172 certainly does not have the impact urged by Wien, neither does it have the rather unusual effect argued by the Arants. Their brief states:

> Appellees additionally feel that AS § 23.30.-172 . . . is applicable to this case and requires that not only the present increases in rates of compensation required by AS § 23.30.175, . . . but any further increases in the rate of compensation affected by amendment to AS § 23.30.175 be paid to appellees subject only to the maximum of 85% of William C. Arant's average weekly wage at the date of his death.

Appellee's Brief at 17. Section 172 has been repealed. The Arants therefore request that this court give effect to a repealed statute and hold that, in the future, they are entitled to increases that have not yet occurred.

Further, the Arants conclude that AS 23.30.172 was made applicable to death benefits by reading significance into inconsequential changes in AS 23.30.215(b). *Compare* ch. 99, § 3, SLA 1966 (death benefits shall be "subject to the same weekly maximum limitation in the aggregate as temporary total disability compensation under § 175(a) of this chapter") *with* ch. 83, § 12, SLA 1975 (deletion of the words "under

■ Both the Alaska and the United States Constitutions forbid laws that impair obligation of contract.[45] Wien has an insurance policy whereby Wien pays premiums and the carrier agrees to pay the compensation awards of Wien's employees. Wien argues, on behalf of Underwriters Adjusting Company, that the maximum rate table impairs obligations under its insurance contract for two reasons. First, Wien argues that the table provides for retroactive increases. We have already discussed this argument. The maximum rate table prospectively phases in an increase. It has no retroactive effect because it does not grant increases to claimants injured *before* the new maximum rates were passed.[46] Wien and its insurance carrier were on notice that any injury resulting from Mr. Arant's employment would be subject to the increasing maximum rates in AS 23.30.-175(a).[47]

Second, Wien argues that the increasing maximums impair contract because they tie compensation payments to an unknown variable, Alaska's future average weekly wage, changes in which "could not be fairly or accurately contemplated by appellant and its carrier at the time the policies were written." It is true that as between the employer and the insurance company, the insurance contract will now have to allocate the risk of changes in the statewide average weekly wage. An important aspect of all contracts, however, is allocating the risk of future change.[48]

Wien's interpretation would mean that any maximum limitation other than a flat dollar amount would be unconstitutional; a percentage of anything would almost always be uncertain. The legislature, according to Wien, could not set maximum limitations that automatically adjust to the future economic situation. All Wien expresses is its understandable preference for the certainty of the dollar amount maximum limitations. The new method of calculating maximums represents a legislative judgment that the certainty provided by the dollar amounts was at the cost of inade-

§ 175(a) of this chapter"). The current version, enacted in 1977, is still slightly different, stating that death benefits shall be subject to the maximum limitation "as provided in § 175 of this chapter." AS 23.30.215(b).

The legislature specified what retroactive increases were appropriate in AS 23.30.172. It explicitly removed death benefits from the section. If the legislature in 1975 intended the retroactive provision it passed in 1974 to cover death benefits, it probably would have said so. Courts do not infer retroactive operation of statutes in such ambiguous circumstances. *See Hood v. State, Alaska Workmen's Comp. Bd.*, 574 P.2d 811, 813–14 (Alaska 1978); AS 01.10.090; 2 C. Sands, Sutherland Statutory Construction § 41.04 (4th ed. 1973).

45. U.S.Const. art. I, § 10; Alaska Const. art. I, § 15.

46. Wien's only case support is *Tennessee Coal & Iron Div. v. Hubbert*, 268 Ala. 674, 110 So.2d 260 (1959), and the cases cited therein. They are not on point. *Tennessee Coal* involved a compensation statute giving the wife of a deceased worker the right to any disability payments to which the deceased worker would have been entitled. The plaintiff's husband had died before enactment of the statute. The court held that the contract clause required application of the statute only to injuries which occurred after the statute's passage. All authority cited in *Tennessee Coal, id.* 110 So.2d at

262–66, simply stands for the proposition that the statute in effect at the time of the work-related accident determines compensation rights.

47. Wien's concept of retroactivity would mean that the contract clause prevents *phasing in* any increase in the maximum limitation. Faced with inadequate compensation levels, the legislature would have to do nothing, enact a small increase, or enact one very large increase. If the legislature could enact one large increase, this court will *not* withhold from the legislature the sensible alternative of spreading that increase over a number of years. *See, e. g., M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 420–21, 4 L.Ed. 579, 605 (1819). Under Wien's analysis, the only way the legislature could phase in an increase in maximum limitations would be to pay for it with public monies. The whole concept of workers' compensation, however, it that the work enterprise and the price of its products bear the cost of injuries occurring in the conduct of the enterprise. *Fruit v. Schreiner*, 502 P.2d 133, 140–41 (Alaska 1972); 1 A. Larson, The Law of Workmen's Compensation §§ 1.00, 2.20 (1978).

48. Consider the classic contract. *A* agrees to buy widgets from *B* at, say, $10.00. If the price of the things necessary to make widgets goes up, *A* benefits from the contract. If their price goes down, *B* benefits from the contract.

quately compensating workers and their families.

## II. ATTORNEY'S FEES

We will consider in turn the fee award for the Board proceeding and for the Superior Court appeal.

AS 23.30.145 provides for award of attorney's fees in workers' compensation cases. AS 23.30.145(a) specifies a formula:

Fees for legal services rendered in respect to a claim are not valid unless approved by the board, *and the fees may not be less than 25 per cent on the first $1,000 of compensation or part of the first $1,000 of compensation, and 10 percent of all sums in excess of $1,000 of compensation. When the board advises that a claim has been controverted*, in whole or in part, the board may direct that the fees for legal services be paid by the employer or carrier in addition to compensation awarded; *the fees may be allowed only on the amount of compensation controverted and awarded.* [emphasis added]

AS 23.30.145(b) grants a reasonable attorney fee:

*If an employer* fails to file timely notice of controversy or fails to pay compensation or medical and related benefits within 15 days after it become dues or *otherwise resists the payment of compensation . . ., the board shall make an award to reimburse the claimant for his costs in the proceedings, including a reasonable attorney fee.* [emphasis added]

In *Haile v. Pan American World Airways, Inc.*, 505 P.2d 838 (Alaska 1973), we held that the section 145(a) formula only applies to "controverted" claims and the section 145(b) grant of reasonable attorney fees applies to an employer who otherwise fails to make payment of compensation.[49] The Arants maintain that Wien controverted the claim. Wien maintains that while it "resisted" payment of the increased amount, it did not "controvert" the claim.

■ The Board's decision makes no mention of the controversion issue. It simply concludes:

We find that the defendant resisted payment of compensation in excess of $198.40 a week, and applicant retained an attorney in the successful prosecution of this case. Attorney fees in the amount of $500 are awarded to applicant's attorney to be paid by the defendant.[50]

---

**49.** Four justices participated in *Haile*. The plurality opinion of the court found that the employer's delay in making payments due to circumstances beyond the employer's control did not constitute "controversion of the claim" and therefore a fee award under AS 23.30.145(a) was not proper. 505 P.2d at 839–41. Chief Justice Rabinowitz would have held that AS 23.30.145(a) prescribes a minimum fee award applicable to all compensation cases, regardless of whether the claim is controverted; the fact of controversion permits the Workmen's Compensation Board to require the employer to pay attorney's fees. *Id.* at 841–42 (concurring and dissenting opinion). Justice Erwin agreed that AS 23.30.145(a) required a finding of controversion by the employer but would have found it on the facts in *Haile*. *Id.* at 842–44 (concurring and dissenting opinion). *See* note 52 *infra*.

**50.** It is not clear whether the Arants raised this issue in the proceeding before the Board. The sole reference at the Board hearing to attorney's fees was at the beginning of the hearing by Wien's attorney:

Mr. Page: There are two questions that are raised aside from the question of penalties and attorney fees which will be taken care of *normally(?)*. [as in the original]

The last word could be "orally." In any event, Wien does not argue that the Arants' request for attorney's fees was not timely raised in the proceedings below.

If reasonable attorney's fees under AS 23.30.-145(b) were proper in this case, the Board still should have conducted a hearing on the question, requested evidence from the parties, or at least indicated in its order how it arrived at the $500.00 determination. *See Haile v. Pan American World Airways, Inc.*, 505 P.2d 838, 841 (Alaska 1973) (remanding for a hearing on attorney's fees and costs). The court in *Reeves v. Sierra Homes*, 29 Or.App. 441, 563 P.2d 1242, 1242 (1977), remanded a case where the record simply revealed the dollar amount granted by the Workmen's Compensation Board: "Without evidence or a stipulation there is no way we can measure the discretion exercised."

We hold that Wien controverted the Arants' claim and remand the case to the Board to compute attorney's fees according to the statutory formula in AS 23.30.145(a).

█ Wien's reliance on *Haile* is misplaced. There, the employer never denied its obligation to pay compensation, it simply delayed payments, and prior to the hearing, the employer informed the Board that it was not contesting the claims. We held that the delay in payments did not constitute a controversion.[51] Wien, however, has consistently denied and litigated its obligation to pay the increase sought, and eventually received by, the Arants.[52]

Wien's failure to file a notice of controversion is not dispositive on the question of attorney's fees. AS 23.30.145(a) requires a finding by the Board of whether there has been controversion in fact. If failure to file a notice of controversion made the employer liable for *lower* attorney's fees, the employer would benefit from noncompliance with the statute and few notices would be filed. This backward incentive contrasts with the working of AS 23.30.155, which requires the employer to file a notice of controversion and penalizes the employer who does not comply.[53] To hold that there is no controversion due solely to the failure to file the notice would be to place form above substance. We hold that a notice of controversion by the employer is not required for an award of attorney's fees under AS 23.30.145(a).[54]

█ AS 23.30.145 seeks to insure that attorney's fee awards in compensation cases are sufficient to compensate counsel for

51. In *Haile*, the Workmen's Compensation Board found as a matter of fact that the employer's delay was due to conditions over which it had no control; the employee did not appeal that ruling and so the court did not examine the Board's conclusion that the delay was involuntary. 505 P.2d at 840–41. Justice Erwin would have found that the employer's delay, due to a six-month investigation of the worker's legal right to compensation, constituted controversion as a matter of law. 505 P.2d at 842–43 (concurring and dissenting opinion).

52. The fact that Wien agreed to pay compensation and only disputed the amount does not preclude a finding of controversion and an award of attorney's fees under AS 23.30.145(a). *Alaska Interstate v. Houston*, 586 P.2d 618, 620 (Alaska 1978). *See J. B. Warrack Co. v. Roan*, 418 P.2d 986, 990 (Alaska 1966); AS 23.30.-145(a) (referring to controverting a claim "in whole or in part").

53. AS 23.30.155, "Payment of Compensation," provides, in part:
(a) Compensation under this chapter shall be paid periodically, promptly, and directly to the person entitled to it, without an award, except where liability to pay compensation is controverted by the employer.
(b) The first installment of compensation becomes due on the 14th day after the employer has knowledge of the injury or death. On this date all compensation then due shall be paid. . . .

. . . . .

(d) If the employer controverts the right to compensation he shall file with the board on or before the 14th day after he has knowledge of the alleged injury or death, a notice . . . stating that the right to compensation is controverted . . . .
(e) If any installment of compensation payable without an award is not paid within 14 days after it becomes due, as provided in (b) of this section, there shall be added to the unpaid installment an amount equal to 20 per cent of it, which shall be paid at the same time as, and in addition to, the installment, *unless notice is filed under (d) of this section or unless the nonpayment is excused by the board after a showing by the employer that owing to conditions over which he had no control the installment could not be paid within the period prescribed for the payment.* [emphasis added]
Thus, an employer must start compensation payments within 14 days of injury; a notice of controversion permits the employer, legally and without late penalty, not to begin payments. Although the opinion in *Haile* is somewhat unclear on this point, the reference to the employer's failure to file a notice of controversion was discussed in the context of AS 23.30.-155(d). 505 P.2d at 839. In *Haile*, the Board did not levy the late penalty because it found the employer's delay "owing to conditions over which he had no control." AS 23.30.155(e). *See* note 51 *supra*.

54. *Alaska Interstate v. Houston*, 586 P.2d 618, 620 (Alaska 1978). The difficulty with interpreting AS 23.30.145(a) may arise from the somewhat awkward language, "When the board *advises* that a claim has been controverted . . . ." (emphasis added). Our opinion in *Alaska Interstate* is to the effect that the word "advises" can be read as "finds."

work performed. Otherwise, workers will have difficulty finding counsel willing to argue their claims.[55] Also, high awards for successful claims may be necessary for an adequate overall rate of compensation, when counsel's work on unsuccessful claims is considered. Taking into account these factors, however, we are still concerned that, in some cases, application of AS 23.30.-145(a) results in a fee award that is "out of all proportion to the services performed." *Haile v. Pan American World Airways, Inc.*, 505 P.2d 838, 840 (Alaska 1973). The remedy for this is statutory change by the legislature, not "interpretation" by the courts. The legislature may wish to examine whether the formula in AS 23.30.145(a) sometimes results in excessive fee awards, awards higher than are necessary to attract counsel into the compensation area.

 For the appeal of the Board's decision, the Superior Court granted the Arants $750.00 in attorney's fees. Before making this award, the court received a motion for $6,033.75 in attorney's fees from the Arants and a supporting memorandum, stating that counsel had worked 80 plus hours at an hourly billing rate of $75.00. The Arants appeal the $750.00 award as an abuse of discretion.

An award of attorney's fees is subject to the broad discretion of the trial court.[56] "An abuse of discretion is established where it appears that the trial court's determination as to attorney's fees was manifestly unreasonable." *Palfy v. Rice*, 473 P.2d 606, 613 (Alaska 1970). The Superior Court's fee award for the appeal should provide for realistic compensation, taking into account the same factors that the Workmen's Compensation Board considers when it grants attorney's fees for non-controverted claims: "the nature, length and complexity of the services performed, transportation charges, and the benefits resulting from the services to the compensation beneficiaries."[57] Additionally, though, the Superior Court should consider the Board's fee award. This is relevant where application of the formula in AS 23.30.145(a) has produced a disproportionately large award for the Board proceeding.[58]

We remand to the Superior Court with directions that it remand to the Board for a determination of attorney's fees. The Superior Court shall make its determination of the fees to be granted because of the appeal after the Workmen's Compensation Board makes its fee award.

The Superior Court's decision upholding the Board's increase in compensation is AFFIRMED. The question of attorney's fees for the Board proceeding and the appeal is REMANDED for further proceedings consistent with this opinion.

---

**55.** *Haile v. Pan American World Airways, Inc.*, 505 P.2d 838, 844 (Alaska 1973) (Erwin, J., concurring and dissenting).

**56.** *State v. Alaska Int'l Air, Inc.*, 562 P.2d 1064, 1067 (Alaska 1977); *City of Valdez v. Valdez Dev. Co.*, 523 P.2d 177, 184 (Alaska 1974); *Cooper v. Carlson*, 511 P.2d 1305, 1309 (Alaska 1973); *State v. Abbott*, 498 P.2d 712, 731 (Alaska 1972); *Palfy v. Rice*, 473 P.2d 606, 613 (Alaska 1970).

**57.** AS 23.30.145(a). The Board takes these factors into account when "a claim has not been controverted, but . . . bona fide legal services have been rendered in respect to the claim . . . ." *Id.* In these circumstances, the Board directs "payment of the fees out of the compensation awarded." *Id.*

**58.** AS 23.30.145(a) provides for a minimum fee. If application of the minimum fee formula yields a fee inadequate to compensate the attorneys, there is the right to appeal to the Superior Court.