**SEWARD MARINE SERVICES, INC., and Fireman's Fund Insurance Company, Appellants,**

v.

**Margaret A. ANDERSON and Rhonda K. Anderson, Appellees.**

**No. 5791.**

Supreme Court of Alaska.

April 16, 1982.

Randall J. Weddle, Faulkner, Banfield, Doogan & Holmes, Anchorage, for appellants.

Walter H. Garretson, Garretson & Almaras, Anchorage, for appellees.

Timothy M. Stone, Anchorage, for amicus curiae Peter Kiewit.

Lance C. Parrish and James A. Parrish, Parrish Law Office, Fairbanks, for amicus curiae Ivory Garrett.

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

BURKE, Justice.

The sole issue presented by this appeal is whether AS 23.30.175(a), the section of the Workers' Compensation Act governing maximum benefit rates, requires calculation of maximum rates at an increasing percentage of the state's average weekly wage for injuries or death occurring after August 31, 1977. On the strength of a footnote in *Wien Air Alaska v. Arant*, 592 P.2d 352 (Alaska 1979), the superior court held that it did. We affirm.

Raymond Anderson died during the course and scope of employment on May 30, 1978. His statutory beneficiaries, a wife and one child, filed for workers' compensation benefits under the applicable sections of the Alaska Workers' Compensation Act. The parties agree that the Andersons are entitled to benefits computed on an average weekly wage of $456.00, the average in effect at the time of Raymond Anderson's death. They disagree, however, with respect to the application of AS 23.30.175(a), the provision governing maximum benefit rates.[1]

As amended in 1977, that section provides:

The weekly rate of compensation for disability or death for a recipient residing in Alaska may not exceed the percentage of the Alaska weekly wage *in effect on the date of injury* as determined by the table contained in this subsection ...

---

1. Computing death benefits under Alaska law involves a multi-step process. Initially, the deceased's average weekly wage at the time of death is calculated under AS 23.30.220. Then under AS 23.30.215 a widow or widower with one dependent child can claim 66⅔% of that wage in the form of compensation payments. If, however, the figure produced by these calculations exceeds the ceilings on awards set forth in AS 23.30.175, the claimants instead receive only the maximum amount. AS 23.30.215(b); AS 23.30.175.

| On | The Rate Shall Be |
|---|---|
| July 1, 1975 | 80 percent of the Alaska average weekly wage |
| January 1, 1976 | 100 per cent of the Alaska average weekly wage |
| January 1, 1977 | 133.3 per cent of the Alaska average weekly wage |
| January 1, 1979 | 166.6 per cent of the Alaska average weekly wage |
| January 1, 1981 | 200 per cent of the Alaska average weekly wage |

AS 23.30.175(a) (emphasis supplied, reflecting effect of 1977 amendment).

As is evident from reading the provision, the phrase "in effect on the date of injury" may modify either the Alaska average weekly wage or the increasing percentage, or both. This ambiguity is at the heart of the present dispute.

The Andersons contend that the 1977 amendment merely fixed the average weekly wage at the level existing at the time of death or a disability and that maximum limitations continue to increase pursuant to the table found in AS 23.30.175(a). They therefore conclude that they are presently entitled to $912.00 per week in compensation payments, that amount representing 200% of the Alaska average weekly wage in effect at the time of Raymond Anderson's death.

Seward Marine Services and Fireman's Fund Insurance Company (hereinafter Seward Marine), however, contend that that ambiguous phrase modifies both the average weekly wage and the increasing percentage, thus concluding that maximum limitations remain irrevocably fixed at the level existing at the time of injury or death. If so, the Andersons are presently entitled to only 133.3 percent of the Alaska average weekly wage in effect at the time of Ray-

mond Anderson's death, or $606.43 per week.[2]

This is not the first time that we have addressed the meaning of AS 23.30.175(a) in either its pre or post amendment form. In *Wien Air Alaska v. Arant*, 592 P.2d 352 (Alaska 1979), we held that the increasing percentages in AS 23.30.175(a), prior to amendment, apply to all claims arising after May 22, 1975. We also stated that the effect of the 1977 amendment would be to fix the weekly wage to that in effect at the date of injury while still granting recipients the benefit of the increasing percentage. *Id.* at 357 n.15. We noted that under § 175(a) prior to its amendment in 1977 it was unclear whether the average weekly wage in effect as of the date of injury would remain constant or would change with the annual recomputation of annual weekly wage. We stated:

One position is that not only the *percentage* of the average weekly wage increases, but that the *average weekly wage* also changes, periodically until 1981, with fluctuations in the state's average weekly wage. Thus, if the state's average weekly wage for the first period of the maximum rate table was $200.00, the maximum computation allowable for that period would be 80 per cent of $200.00, or $160.00. If the state's average weekly wage in 1976 were $300.00, the maximum compensation for all claims would be the increased percentage allowed by the statute, 100 per cent of that increased average wage, or $300.00 per week, etc. A person injured after 1977 could not claim this. The 1977 amendment still gives recipients an increasing percentage, but at an increasing percentage relative to the same amount, *i.e.*, the weekly wage in effect at the date of injury. Thus, using the same hypothetical figures, the limitation would rise according to the new increasing percentage, 100 per cent for all

---

**2.** The Alaska Workers' Compensation Board ruled for Seward Marine in the action below. *Margaret A. & Rhonda K. Anderson v. Seward Marine Services, Inc. and Fireman's Fund Ins. Co.*, No. 78–05–1759 (May 8, 1980). It bears noting, however, that the board subsequently reconsidered the issue and now holds the opin-

ion that the average weekly wage in effect on the date of injury remains constant, but that maximum limitations continue to increase pursuant to the table in AS 23.30.175(a). *Barker v. Earthmovers of Fairbanks and Alaska Pacific Assurance Co.*, No. 78–08–0015 (February 19, 1981).

claims, but relative to the same average weekly wage, *i.e.*, 100 per cent of $200.00, or $200.00 for injuries occurring during the first period of the table. *Id.* at 357 n.15.

Seward Marine argues that the statement quoted above concerning the effect of the 1977 amendment is dictum, and as such is not controlling. However, after considering the issues presented, we conclude that the legislature intended to fix only the average weekly wage at the level existing at the time of injury, and hence affirm the lower court's opinion.

## I

The sole issue presented by this appeal is one of statutory interpretation. We are thus faced with a question of law over which this court has always exercised independent review. *Hood v. State, Workmen's Compensation Board*, 574 P.2d 811, 813 (Alaska 1978); *Union Oil Company of California v. Department of Revenue*, 560 P.2d 21, 23 (Alaska 1977). Accordingly, we independently consider the meaning of AS 23.-30.175(a).

The fundamental purpose of statutory interpretation is to ascertain and give effect to the intent of the legislature. *Younger v. Superior Court*, 577 P.2d 1014, 1021 (Cal. 1978); *Janovich v. Herron*, 91 Wash.2d 767, 592 P.2d 1096, 1098 (1979). In this case, a brief review of the genesis of AS 23.30.-175(a) and a consideration of the forces which prompted the ambiguous amendment, provide a valuable starting place in our search for legislative intent.

In 1972, Congress created the National Commission on State Workmen's Compen-sation Laws to assess whether state compensation systems provided "an adequate, prompt, and equitable system of compensation for injury or death arising out of or in the course of employment." 29 U.S.C. § 676(a)(2) (1976). Determining that the various state compensation systems were on balance inadequate and inequitable, the Commission issued eighty-four specific recommendations for improving state systems, nineteen of which were deemed essential. One such essential recommendation included an increase in the maximum limitation on death benefits to 200% of the state's average weekly wage, accomplished through a gradual phase-in procedure.[3] This recommendation was subsequently deemed among the most significant of the Commission's recommendations.[4] *Director, Office of Workers' Compensation Programs v. Boughman*, 545 F.2d 210, 215 n.15 (D.C. Cir.1976).

An examination of maximum limitations on death benefits existing in Alaska prior to the adoption of AS 23.30.175(a) gives force to the Commission's findings. Prior law purported to give claimants up to 90% of the deceased's salary, in the form of compensation payments, to the deceased's beneficiaries. But since the maximum limit on death benefits was $175.00 per week, while the average weekly wage was $248.00, most claimants instead received the maximum amount. In this fashion, arbitrarily low ceilings frustrated achievement of the statute's purpose of adequate compensation. *Wien Air Alaska v. Arant*, 592 P.2d 352, 359 (Alaska 1979).

In 1975, the Alaska Legislature alleviated this problem by adopting the recommended

---

**3.** The recommendation was phrased as follows: We recommend that as of July 1, 1977, the maximum weekly benefit for temporary total disability be at least 133⅓ percent of the State's average weekly wage; as of July 1, 1979, the maximum should be at least 166⅔ percent of the State's average weekly wage, and on and after July 1, 1981, the maximum should be at least 200 percent of the State's average weekly wage.
The Report of the National Commission on State Workmen's Compensation Laws 62 (July 1972).

**4.** Indeed, the Council of State Governments noted that "limited benefits payable in the case of death under state workmen's compensation laws were an important consideration in causing the National Commission to find that generally workmen's compensation laws provided inadequate benefits." *Advisory Committee on Workmen's Compensation Laws, Council of State Governments, Workmen's Compensation: A Challenge to the States* 13 (February 1973).

200% phase-in provision.[5] In so doing, the legislature ensured that claimants would eventually receive adequate compensation, while cushioning the impact of the provision on employers and their workers' compensation insurance carriers by increasing maximums gradually.

As initially enacted, AS 23.30.175(a) failed to specify whether the average weekly wage used to calculate compensation payments was that in effect at the time of injury, or that in effect at the time of payment. Reference to AS 23.30.172, however, suggested that the wage at the time of payment controlled. Establishing the so-called current benefits rule, that section provided:

> Benefits for temporary and permanent disability shall be calculated under this chapter according to *currently existing benefit* rates, regardless of the benefit rates in existence at the time of the injury, unless this calculation would cause a decrease in the actual benefits receivable.

AS 23.30.172 (emphasis added).

Thus, maximum limitations on death and disability payments were calculated on the basis of *two* escalating factors, the average weekly wage in effect at the time of payment, a figure driven upward by the forces of inflation, and the increasing percentages of AS 23.30.175(a).

Operating together, these two factors led to greatly increased maximums on death and disability payments. Due to the upswing in the Alaskan economy in the 1970's, the Alaska average weekly wage increased from $248.00 in June 1975, to $414.00 in June 1977, an amplification of 67% in just two years.[6] In conjunction with the increasing percentages of AS 23.30.175(a), the sharply increased average weekly wage figure resulted in maximums nearly three times as great as those under prior law.[7]

Apparently considering these maximums unduly high, the legislature acted in 1977 and repealed AS 23.30.172, thereby eliminating the current benefits rule, and amended AS 23.30.175(a) by adding the phrase "in effect on the date of injury." It is thus clear that the average weekly wage at the time of injury governs, but it is unclear whether employees injured between 1977 and 1981 can claim the benefit of the increasing percentages of AS 23.30.175(a).

Seward Marine contends that the legislative history to S.B. 131, the bill accomplishing the changes discussed above, unequivocably establishes that the legislature intended to fix both the average weekly wage and the increasing percentages at the level existing at the time of injury. We disagree, finding the pertinent legislative history both meager and inconclusive.

The sole document truly indicative of legislative intent is the governor's transmittal letter to S.B. 131.[8] This letter notes that

---

**5.** Numerous states now base a maximum limitation on death benefits on a percentage of the state's average weekly wage. *See Analysis of Workmen's Compensation Laws,* Chamber of Commerce of the United States, Chart VII (1981). The majority of these states place the ceiling on death benefits at 100% of the state's average weekly wage. In four jurisdictions, however, the ceiling is placed at more than 100% of the state's average weekly wage.

Under the Longshoremen's And Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (1976) and the law of the District of Columbia, 36 D.C.Code § 501 et seq. (1973), maximum limitations on *disability* benefits are set at 200% of the national weekly wage. The federal act, however, neglects to set a maximum limitation on death benefits. In *Director, Office of Workers' Comp. Programs v. Rasmussen,* 440 U.S. 29, 99 S.Ct. 903, 59 L.Ed.2d 122 (1979) the United States Supreme Court held

that this omission was not inadvertent and concluded that death benefits payable under the act are not subject to maximum limitations.

**6.** Statistics from the Workers' Compensation Division of the Department of Labor, State of Alaska.

By way of comparison, the national average weekly wage increased from $159.19 in 1975 to $183.61 in 1977, an increase of only 15%. *See Director, Office of Workers' Comp. Programs v. Rasmussen,* 440 U.S. 29, 34 n.5, 99 S.Ct. 903, 907 n.5, 59 L.Ed.2d 122, 128 n.5 (1979).

**7.** In 1977, when AS 23.30.172 was repealed, the maximum benefit level had risen to $551.86 per week (state average weekly wage of $414.00 times 133%).

**8.** Seward Marine presents several additional documents that they believe bear on the legisla-

the bill would generally reduce the costs associated with workers' compensation benefits in an effort to make compensation insurance more affordable to the employers of this state. It further states that section 1 of the bill would further this goal by repealing AS 23.30.172, thereby eliminating the current benefits rule. In specific reference to AS 23.30.175(a), the letter notes that the section as amended would establish a compensation rate as of the date of injury.

These comments merely establish that the legislature intended to eliminate the current benefits rule. After reviewing escalating average weekly wage statistics, the legislature doubtlessly concluded that fixing the average weekly wage at the level existing at the date of injury by repealing AS 23.30.172 would reduce benefit costs.[9] And eliminating the current benefits rule also establishes a compensation rate on the date of injury. With the average weekly wage figure irrevocably fixed, a workers' compensation insurance carrier can determine on the date of injury its ultimate liability simply by multiplying the average weekly wage figure in effect on the date of

injury by the preordained increases of AS 23.30.175(a). We would be speculating if, on the basis of these comments, we held that the legislature intended to fix *both* factors at the level existing at the time of injury.

Absent a definitive expression of legislative intent in the legislative history, we turn to a consideration of the policies underlying the Alaska's Workers' Compensation Act generally and AS 23.30.175(a) in particular. Initially, we note that any doubt about the meaning of AS 23.30.175(a) should be resolved in the Andersons' favor. *See Hood v. State, Workmen's Compensation Board,* 574 P.2d 811, 813 (Alaska 1978); *S.L.W. v. Alaska Workmen's Compensation Board,* 490 P.2d 42, 43 (Alaska 1971).

Adopting Seward Marine's construction of AS 23.30.175(a) would leave many workers inadequately compensated. As this court noted in a slightly different context in *Wien Air Alaska v. Arant,* 592 P.2d 352 (Alaska 1979).

> Claimants ... would be frozen at an amount that did not achieve the purposes of the statute. Really, no workers would

ture's intent in amending AS 23.30.175(a). These documents include transcripts of testimony prepared for presentation to the Senate Labor and Management Committee, a memorandum from the Office of Legislative Affairs addressed to the Honorable Frank Ferguson, a memorandum from the Director of the Division of Insurance to the Honorable Joseph Hayes, and a memorandum from the Director of the Workers' Compensation Division, dated July 31, 1977, to the Commissioner of Labor.

We initially note that this court has stated that testimony before a committee is of little value in ascertaining legislative intent, at least where the committee fails to prepare and distribute a report incorporating the substance of the testimony. *Alaska Pub. Employees Ass'n v. State,* 525 P.2d 12, 17–18 (Alaska 1974) (citing 2A Sutherland, Statutory Construction § 48.10 (4th ed. Sands 1973)). Here, Seward Marine has made no showing that the proffered testimony was endorsed by the committee or relied on in any way. We would therefore be engaging in pure speculation were we to impute the beliefs of the speakers to the legislature as a whole.

We do, however, note that the proffered testimony does not unequivocally establish that S.B. 131 was designed, among other things, to fix the percentage in AS 23.30.175(a) at the

level existing at the time of injury. As with the governor's transmittal letter, the comments are equally susceptible of speaking only to fixing the average weekly wage.

The two documents which do support Seward Marine's position are the memorandum from the Legislative Affairs Agency, and the memorandum from the Director of the Workers' Compensation Division. However, Seward Marine made no showing that these memoranda were ever read by the legislators or submitted in any form to the legislature as a body. Accordingly, we do not regard these memoranda as determinative on the question of legislative intent. *Alaska Pub. Employees Ass'n v. State,* 525 P.2d 12, 17–18 (Alaska 1974).

**9.** We recognize that eliminating the current benefits rule only reduced costs in regard to those claimants injured in 1977, for the average weekly wage decreased in 1979 after peaking in 1978 at $456.00 per week. However, it should be remembered that the legislature was acting in an inflationary era when it amended AS 23.30.175(a). We therefore have difficulty accepting Seward Marine's argument that that body acted in 1977 with the knowledge that the state's average weekly wage would decrease in 1979.

receive a phased-in increase; each successive group of workers would be subject to different maximum rates. [This] position makes the phase-in a device to *limit* the number of claimants who would have the benefit of an adequate maximum limitation.

*Id.* at 359 (emphasis in original). We think this language perfectly apropos.

Seward Marine's position is thus inconsistent with the very purpose of workers' compensation—the adequate compensation of victims of a work-related injury.[10] Given the history of AS 23.30.175(a), and the importance of avoiding inequitably low maximum limitations, we do not think that the legislature intended to deny those employees injured between 1977 and 1981 the benefit of the increasing percentages of AS 23.30.175(a). Rather, we agree with the Andersons that the ambiguous phrase was added to that section solely to clarify that the average weekly wage at the time of injury controlled. By repealing AS 23.30.-

172, the legislature removed the sole reference to which average weekly wage (time of payment or time of injury) was relevant in determining maximum compensation limitations. To ensure that the average weekly wage at the time of injury governed after 1977, the legislature appended the phrase "in effect on the date of injury" to the language "Alaska weekly wage."

We therefore hold that AS 23.30.175(a) gives recipients an increasing percentage, but an increasing percentage relative to a fixed amount, *i.e.*, the average weekly wage in effect at the time of death or disability. Accordingly, the decision of the lower court is AFFIRMED.

---

**10.** *Wien Air Alaska v. Arant*, 592 P.2d 352, 357     (Alaska 1979).