Ryan NELSON, Appellant,

v.

MUNICIPALITY OF ANCHORAGE and Western Power and Equipment, Inc., Appellees.

No. S–13775.

Supreme Court of Alaska.

Dec. 23, 2011.

William H. Ingaldson and Peter J. Maassen, Ingaldson, Maassen & Fitzgerald, P.C., Anchorage, for Appellant.

Joyce Weaver Johnson, Assistant Municipal Attorney, and Dennis A. Wheeler, Municipal Attorney, Anchorage, for Appellee Municipality of Anchorage.

Marc G. Wilhelm, Richmond & Quinn, Anchorage, for Appellee Western Power & Equipment, Inc.

Before: CARPENETI, Chief Justice, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

A worker agreed to perform an errand for his employer, a subcontractor, on the worker's day off. While engaged in the errand, the worker was injured at the job site. His employer filed a notice of controversion on the basis that the worker was intoxicated at the time of the injury and his injuries were proximately caused by his intoxication. The worker then sued the general contractor and the Municipality of Anchorage (the owner of the job site) for negligence. The defendants asked the superior court to dismiss the action under the exclusive remedy provision of the Alaska Workers' Compensation Act. The superior court granted summary judgment to the general contractor and the Municipality. The worker appeals, arguing that lack of a workers' compensation remedy permits him to bring a common law negligence action or, alternatively, that the exclusivity provision of the Alaska Workers' Compensation Act denies him due process. He also argues, as a matter of statutory construction, that the Municipality cannot be a project owner. Because the worker has not shown that the employer's controversion of benefits left him to his common law remedies, his statutory construction and constitutional claims are not ripe. We also hold that the Municipality can be a project owner.

## II. FACTS AND PROCEEDINGS

Ryan Nelson worked for Alaska Concrete & Sawing, Inc. in February 2006. Nelson's regular day off was Saturday, but on Saturday, February 4, 2006, Nelson's employer called him at home and asked him to deliver drill bits to a job site at the Municipality of Anchorage's Solid Waste Services Transfer Building.

The job site was the building where solid waste is received from both residential and commercial customers and transferred to dump trucks bound for the municipal landfill. The building has two levels: solid waste is dumped onto the "tipping floor" on the upper level and then pushed by front-end loaders through openings in the floor. Dump trucks are filled when they are driven through the lower level. Two hydraulic cranes, called cherry pickers, are located on opposite sides of the tipping floor.

In late January 2006, the Municipality began repairs on the north cherry picker after its foundation failed. The Municipality contracted with an engineering firm, MACTEC Engineering and Consulting, Inc., to design a new foundation and oversee the repairs. The Municipality also contracted with Western Power & Equipment Corporation to work on remounting the cherry picker; that work included removing the bolts that held the cherry picker in place.[1] Western Power subcontracted with Alaska Concrete, Nelson's employer, to drill the bolts out of the concrete platform on which the cherry picker sat.

When Nelson arrived at the waste transfer facility to deliver the drill bits, he asked where to take them and a municipal employee gave him directions. Nelson evidently did not find his coworkers and he returned to the municipal employee's station for instructions. The municipal employee radioed someone, who told her to send Nelson to the south (or "A") side door. She relayed the information to Nelson, who went to the "A" door.

Inside the "A" door was a pony wall, about three feet high and covered by opaque Visqueen. The Visqueen was placed there in order to retain heat in the truck tunnel; it concealed the hole in the floor through which waste was pushed into dump trucks. There were evidently no signs or other indication of hazards in the area except some orange cones, which "had been placed along the open edge/perimeter of [the] floor opening on top of the [V]isqueen sheeting." In an apparent

---

1. Western Power was doing business as Yukon Equipment, Inc. at the time.

attempt to cross the building, Nelson jumped over the pony wall and landed on the Visqueen. He fell about 20 feet through the hole in the floor to the lower level and suffered head trauma.

Alaska Concrete reported the injury to the Alaska Workers' Compensation Board and began to pay workers' compensation benefits to Nelson. About six weeks after the accident, Alaska Concrete controverted further benefits, claiming that Nelson was intoxicated at the time of the accident and that his intoxication proximately caused the accident. Nelson did nothing further in his workers' compensation case.

Instead, Nelson sued the Municipality, Western Power, and Yukon Equipment, Inc. for negligence. The defendants all answered. Initially, only Western Power raised the exclusive remedy provision of the Alaska Workers' Compensation Act as a defense. The Municipality filed a third-party complaint against MACTEC because MACTEC planned and monitored the repairs. MACTEC answered and raised additional affirmative defenses.

On October 24, 2008, Western Power moved to dismiss Nelson's lawsuit because of the exclusive remedy provision of the Alaska Workers' Compensation Act. The other defendants joined the motion to dismiss. Nelson opposed the motion. He argued that extending the exclusive liability protection to general contractors and project owners violated his equal protection rights and that, as applied to the facts of his case, it violated his due process rights because he did not receive "a quid pro quo" after his employer stopped paying benefits. He also argued that the exclusive remedy provision did not apply to the Municipality as a matter of law; and that, on the facts of his case, Western Power was not an "employer."

At oral argument before the superior court, the parties agreed that the motion to dismiss should be treated as a motion for summary judgment. The superior court granted summary judgment to all defendants. It concluded that: (1) the legislature's extension of the exclusive remedy protection to "project owners" and "general contractors" was not unconstitutional; (2) the Municipality and Western Power were protected by the exclusive remedy provision; and (3) the claims against Yukon Equipment should be dismissed. Nelson moved for reconsideration, asserting that the court failed to address several of his legal arguments. The superior court took no action on the motion for reconsideration and it was deemed denied.[2] Nelson appeals.

## III. DISCUSSION

### A. Standard Of Review

■■■ We review a grant of summary judgment de novo.[3] Summary judgment is proper if there is no genuine factual dispute and the moving party is entitled to judgment as a matter of law.[4] In reviewing a grant of summary judgment, we draw all reasonable inferences in favor of the nonmoving party.[5] The interpretation of a statute is a question of law to which we apply our independent judgment; we interpret the statute according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose.[6] Whether a case is ripe is a legal question.[7] "The requirement of 'ripeness' means that there must be 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"[8]

---

**2.** Alaska R. Civ. P. 77(k)(4).

**3.** *Parker v. Tomera,* 89 P.3d 761, 765 (Alaska 2004).

**4.** *Id.*

**5.** *Moore v. Allstate Ins. Co.,* 995 P.2d 231, 233 (Alaska 2000).

**6.** *Grimm v. Wagoner,* 77 P.3d 423, 427 (Alaska 2003) (citing *Native Vill. of Elim v. State,* 990 P.2d 1, 5 (Alaska 1999)).

**7.** *See State v. Am. Civil Liberties Union of Alaska,* 204 P.3d 364, 368 (Alaska 2009) (holding that review of ripeness decisions is de novo).

**8.** *Lowell v. Hayes,* 117 P.3d 745, 758 n. 61 (Alaska 2005) (quoting *Brause v. State, Dep't of Health & Soc. Servs.,* 21 P.3d 357, 359 (Alaska 2001)).

## B. The Municipality Can Be A Project Owner.

■ Alaska law requires that "project owners" must pay workers' compensation to injured workers if the workers' employer is a contractor that has failed to secure these payments.[9] Nelson argues that the Municipality cannot be a "project owner" as defined by AS 23.30.045(f)(2) because, as a political subdivision of the State, it is covered by a different subsection of the statute, AS 23.30.045(d). He also argues that the Municipality is not a "person" for purposes of the workers' compensation act and concludes from this that the Municipality cannot be a "project owner." Nelson contends that the Municipality should be classified as a "contract-awarding entity" under subsection .045(d) rather than a "project owner" under subsections .045(a) and .045(f); he asserts that, as a result, the exclusive remedy provision of the Alaska Workers' Compensation Act does not shield the Municipality because AS 23.30.055 only protects those who are liable under AS 23.30.045(a), not those who are liable under AS 23.30.045(d).

The Municipality responds that: (1) Nelson waived the argument that the Municipality is a person because of his service of process on the Municipality; (2) as a matter of statutory construction, the Municipality is a person for purposes of the workers' compensation act; and (3) the legislative history demonstrates that the State and its political subdivisions can be project owners. Nelson replies that accepting the Municipality's arguments would "impose[ ] plainly redundant obligations on political subdivisions."

Alaska Statute 23.30.045(a) provides:

An employer is liable for and shall secure the payment to employees of the compensation payable under AS 23.30.041, 23.30.050, 23.30.095, 23.30.145, and 23.30.180–23.30.215. If the employer is a subcontractor and fails to secure the payment of compensation to its employees, the contractor is liable for and shall secure the payment of compensation to employees of the subcontractor. *If the employer is a contractor and fails to secure the payment of compensation to its employees or the employees of a subcontractor, the project owner is liable for and shall secure the payment of the compensation to employees of the contractor and employees of the subcontractor, as applicable.*[10]

Alaska Statute 23.30.045(f)(2) defines "project owner" as "a person who, in the course of the person's business, engages the services of a contractor and who enjoys the beneficial use of the work." "Person" is not separately defined for purposes of the workers' compensation act, but "employer" is defined as "the state or its political subdivision or a person employing one or more persons in connection with a business or industry coming within the scope of this chapter, and carried on in this state." [11] And AS 01.10.060(a)(8) generally provides that "person" includes "a corporation, company, partnership, firm, association, organization, business trust, or society, as well as a natural person." [12] When "includes" is used in a statute, it must be construed "as though followed by the phrase 'but not limited to.' " [13]

Finally, AS 23.30.045(d) provides:

A contract may not be awarded by the state or a home rule or other political subdivision of the state unless the person to whom the contract is to be awarded has submitted to the contracting agency proof, furnished by the insurance carrier, of current coverage by workers' compensation

---

**9.** AS 23.30.045(a).

**10.** Emphasis added.

**11.** AS 23.30.395(20).

**12.** The Municipality argues that Nelson waived any argument that it is not a corporation by serving his complaint on the Municipality under the rule for serving a public corporation. This argument lacks merit. How the court requires service on a political subdivision of the state has nothing to do with the legislature's definitions of the words at issue. Different statutes have different definitions of "corporation" and "person." *Compare* AS 10.25.640(3) (including state or political subdivision in definition of "person"), *with* AS 34.60.150 (defining "person" and "state agency" separately). The relevant question here is how "person" is defined in AS 23.30.045 and .055.

**13.** AS 01.10.040(b).

insurance.... The person to whom the contract is awarded shall keep the workers' compensation insurance policy in effect during the life of the contract with the state or political subdivision. If the state or the political subdivision ... fails to obtain proof of coverage ... or to protect itself under (e) of this section, and an employee of the contractor is injured during the term of the contract, the state or the political subdivision is liable for workers' compensation to the employee if the employee is unable to recover from the employer because of the employer's lack of financial assets. The state or the political subdivision is not liable, however, to the employee for the workers' compensation if the employee can recover from the employer under (a) and (b) of this section.

Nothing in the language or the legislative history of the project owner provision suggests that the legislature meant to exclude the State and its political subdivisions from the definition of "project owner." To the contrary, the legislative history manifests an intent to include the State and its political subdivisions. In response to Senator Scott Ogan's concern that "the State of Alaska, being the largest project owner in the state, could be liable for workers' compensation if someone doesn't do their homework," [14] Jack Miller, attorney for the Alaska State Chamber of Commerce, implied that the State would fall within the definition of "project owner." [15] Mr. Miller also informed the legislature that AS 23.30.045(d)-(e) require the State to ascertain whether its contractors have workers' compensation insurance. [16]

Nelson argues on appeal that Mr. Miller's testimony before the legislature should not be given great weight, but Senator Seekins, the sponsor of the project owner amendment, asked Mr. Miller to answer other legislators' questions about the legislation at two hearings. [17] Under these circumstances, Mr. Miller's testimony is entitled to greater weight than that of the average witness. [18]

The statutory language evinces no attempt to exclude the State from the statute. Alaska Statute 23.30.055 provides in part, "In this section, 'employer' includes, in addition to the meaning given in AS 23.30.395, a person who, under AS 23.30.045(a) is liable for or potentially liable for securing payment of compensation." The definition of "employer" for purposes of exclusive liability includes entities that are not employers under AS 23.30.395—project owners and contractors. Thus the distinction made in AS 23.30.395(20) between the State and other persons does not control our construction of AS 23.30.055. The general definition of "person" in AS 01.10.060 can be used to determine whether the Municipality can be a "project owner." As Nelson concedes, in appropriate circumstances "person" can include the State and its political subdivisions. [19] We hold that it does here.

Nelson also argues that AS 23.30.045(d)—not the exclusive remedy provision—governs when the Municipality engages the services of a contractor because AS 23.30.045(d) is a more specific statute. Alaska Statute 23.30.045(d) provides that the State or a political subdivision can only award contracts to persons who submit proof of workers' compensation coverage. If the coverage is cancelled during the course of the contract, subsection .045(e) permits the State either to terminate its contract with the contractor or to pay for the contractor's workers' compensation policy.

---

**14.** Minutes, Sen. Judiciary Comm. Hearing on S.B. 323, 23d Leg.2d Sess. at 34 (Apr. 14, 2004) (statement of Sen. Scott Ogan).

**15.** *Id.* at 35 (testimony of Jack Miller).

**16.** *Id.*

**17.** Minutes, Sen. Judiciary Comm. Hearing on S.B. 323, 23d Leg.2d Sess. at 20 (Apr. 2, 2004) (statement of Sen. Ralph Seekins); Minutes, Sen. Judiciary Comm. Hearing on S.B. 323, 23d

Leg.2d Sess. at 9–10 (Apr. 16, 2004) (statement of Sen. Ralph Seekins).

**18.** *Cf. Seward Marine Servs., Inc. v. Anderson,* 643 P.2d 493, 496–97 n. 8 (Alaska 1982) (noting committee testimony must have been "endorsed by the legislature or relied on" to be persuasive evidence of legislative intent).

**19.** *See Mustafoski v. State,* 867 P.2d 824, 833–34 (Alaska App.1994) (holding State is "person" for purposes of judicial recusal statute).

Nelson contends that AS 23.30.045(d) would be redundant if the State or the Municipality fell under the definition of "project owner" in AS 23.30.045(f)(2). In his view, AS 23.30.045(d) and .045(e) are more specific, so they should apply instead of the project owner provision, which Nelson considers more general. The Municipality responds that the project owner amendments "affect the potential liability of the Municipality" and that subsection .045(d) "is not the sole source of the Municipality's potential liability." It maintains that because it is potentially liable for workers' compensation as a project owner, it is protected by AS 23.30.055's exclusive liability provision.

When construing a statute, this court "presume[s] that the legislature intended every word, sentence, or provision of a statute to have some purpose, force, and effect, and that no words or provisions are superfluous."[20] "[A]ll sections of an act are to be construed together so that all have meaning and no section conflicts with another."[21] If one statutory "section deals with a subject in general terms and another deals with a part of the same subject in a more detailed way, the two should be harmonized, if possible; but if there is a conflict, the specific section will control over the general."[22] "[I]f two statutes conflict, then the later in time controls over the earlier."[23]

We find no conflict between these statutes. Nelson argues that interpreting the statute so that the Municipality falls within the definition of "project owner" would make part of subsection .045(d) superfluous. There may be times when the two statutory provisions overlap, but they can also cover different situations. The two statutory subsections

impose the same type of obligation on the Municipality—they both require the Municipality to ensure that its contractors have workers' compensation insurance or assume the risk of being liable for workers' compensation benefits—but AS 23.30.045(d) applies to a broader range of contracts than AS 23.30.045(f).

By its terms, AS 23.30.045(d) applies any time the State or a political subdivision contracts with another party. Alaska Statute 23.30.045(f)(2) applies only to a subset of those contracts, those involving project owners. To be a "project owner," a person must "engage[ ] the services of a contractor."[24] A contractor "does not include a vendor whose primary business is the sale or leasing of tools, equipment, other goods, or property."[25] The Municipality would not be a "project owner" if it entered into a contract with a vendor whose primary business was leasing equipment, but AS 23.30.045(d) would still require it to ensure that the vendor had workers' compensation coverage. We conclude that AS 23.30.045(d) and AS 23.30.045(f) do not conflict, and that the Municipality can be a "project owner" under AS 23.30.045(f)(2). We affirm the superior court's decision that the Municipality was a project owner here.[26]

## C. Nelson's Constitutional And Statutory Claims Are Not Ripe.

In this court Nelson argues that the project owner amendments to the workers' compensation act must be construed as permitting him to sue the Municipality and Western Power because to construe them otherwise would violate his due process rights.[27] Nelson's argument arises from the

---

**20.** *Mech. Contractors of Alaska, Inc. v. State, Dep't of Pub. Safety,* 91 P.3d 240, 248 (Alaska 2004) (quoting *Kodiak Island Borough v. Exxon Corp.,* 991 P.2d 757, 761 (Alaska 1999)) (internal quotation marks omitted).

**21.** *In re Hutchinson's Estate,* 577 P.2d 1074, 1075 (Alaska 1978).

**22.** *Id.*

**23.** *Allen v. Alaska Oil & Gas Conservation Comm'n,* 147 P.3d 664, 668 (Alaska 2006).

**24.** AS 23.30.045(f)(2).

**25.** AS 23.30.045(f)(1).

**26.** Nelson does not appear to contest that the Municipality engaged the services of a contractor in the course of its business and enjoyed the beneficial use of the contractor's work.

**27.** In the trial court, Nelson focused his arguments on a facial challenge to the constitutionality of the 2004 project owner amendments. Our opinion in *Schiel v. Union Oil Co. of Cal.* foreclosed those arguments in Nelson's case. *See* 219 P.3d 1025, 1029–37 (Alaska 2009) (holding that extension of exclusive liability to project

premise that he has been deprived of a workers' compensation remedy because his employer controverted further benefits based on his alleged intoxication at the time of the accident. According to Nelson, controversion of benefits leaves him to his common law remedies: if AS 23.30.055 prevents him from pursuing a negligence claim, he will be denied *any* remedy for his injury, which would violate his right of access to the court. Nelson concludes that he therefore has a right to bring a negligence action.

We asked the parties to provide supplemental briefing on the issue of ripeness. We also asked for supplemental information about whether Nelson had filed a written workers' compensation claim with the Board. The parties agreed that Nelson had not filed a written workers' compensation claim. Instead, shortly after Nelson was injured, Alaska Concrete filed a notice of Nelson's injury and voluntarily began paying benefits. When toxicology tests revealed that Nelson may have been intoxicated at the time of the accident, Alaska Concrete filed a notice of controversion. Although the parties all argued, for different reasons, that this appeal is ripe despite Nelson's failure to adjudicate his claim before the Board, we conclude that, with a few exceptions, the issues raised in this appeal are not yet ripe for review.[28]

### 1. Alaska Concrete's controversion did not leave Nelson to his common law remedies.

Nelson argues that his employer's controversion of benefits leaves him to his common law remedies because the controversion "took [him] outside the coverage of the Workers' Compensation Act, by the Act's own terms." Because he considers his case to be outside the scope of the act, he alleges that he must be allowed to pursue his common law remedies. Western Power responds that Nelson's argument is contrary to the Alaska Workers' Compensation Act because, under Nelson's theory, every time an employer controverted a claim for any reason, the worker would have the right to bring a tort suit, even when he had a remedy before the Board.

A controversion is a notice from the employer that it has a basis in law or fact to stop paying workers' compensation benefits that are otherwise automatically due by statute.[29] If an injured worker wants to pursue workers' compensation benefits in the face of a controversion, he must take the next procedural step to secure them.[30] If the worker has not filed a written claim before the controversion, he must do so within a specific period of time.[31] If the worker has filed a written claim, he must ask for a hearing or take other steps to preserve his right to a hearing; otherwise, his claim can be denied by operation of statute.[32]

There are times when the parties disagree about whether an injury comes within the scope of the workers' compensation act. For example, in *Himschoot v. Shanley*, the parties disputed whether a worker injured in a car crash on his way to lunch was injured in the course and scope of employment.[33] Under our case law, the Board and the superior court have concurrent jurisdiction over the issue of an employee's status at the time of injury, and "the question whether a court should defer [to the Board] depends on the

owners did not violate due process or equal protection rights of injured workers).

**28.** *See State v. Am. Civil Liberties Union of Alaska,* 204 P.3d 364, 368 (Alaska 2009) (citing *Istrice v. City of Sparks,* 8 Fed.Appx. 841, 843 (9th Cir.2001)) ("Because ripeness constrains the power of courts to act, courts should not rely on agreement by the parties that a case is ripe for decision.").

**29.** AS 23.30.155. *See also Irby v. Fairbanks Gold Mining, Inc.,* 203 P.3d 1138, 1147 (Alaska 2009) (describing when controversion is made in good faith).

**30.** *See Bailey v. Tex. Instruments, Inc.,* 111 P.3d 321, 325–26 n. 10 (Alaska 2005) ("Once an employer controverts a claim, the burden shifts to the employee to prosecute the claim promptly."). AS 23.30.155(h) also permits the Board to take action "upon its own initiative" when, *inter alia*, a controversion is filed.

**31.** AS 23.30.105.

**32.** AS 23.30.110(c); *Kim v. Alyeska Seafoods, Inc.,* 197 P.3d 193, 198 (Alaska 2008).

**33.** 908 P.2d 1035, 1036–37 (Alaska 1996).

unique facts of every case."[34] To decide whether a court should defer to the Board, we have looked at whether cases involved questions of law;[35] what action, if any, was taken in the administrative proceeding;[36] and how long the parties litigated in court.[37]

But the court's jurisdiction to decide whether an injury comes within the workers' compensation act's coverage does not mean that the worker is left to his common law remedies. If a trial court decides that the injury occurred in the course and scope of employment, the case is remanded to the Board for adjudication of the worker's claim.[38] If the court determines that the injury did not happen in the course and scope of employment, it has jurisdiction over the worker's negligence action.[39]

Western Power argues that an employer's exposure to liability as a "contractor" or "project owner" is determined at the time of injury, not after the Board hears a case. But because it may not always be clear at the outset whether an on-site injury occurred in the course and scope of employment, status as a project owner cannot always be determined at the time of injury. For example, in *Estate of Milos v. Quality Asphalt Paving, Inc.*, the superior court granted summary judgment to an employer based on the exclusive remedy provision of the workers' compensation act.[40] We reversed that trial court order granting summary judgment because we decided that a material factual dispute existed about the employee's status at the time of injury.[41]

The exclusive liability protection afforded a project owner or a contractor is no greater than that of an employer; if an employer cannot use the exclusive remedy defense in a case, neither can the project owner or contractor.

## 2. Nelson must pursue his claim before making a constitutional challenge to the statute.

As explained, Nelson asks us to construe AS 23.30.055 as permitting him to bring a negligence action against Western Power and the Municipality. His argument has two parts: he argues that if AS 23.30.055 is construed as prohibiting his lawsuit, he will have no remedy at all for his injury and that this would violate his due process rights. Alternatively, he argues as a matter of statutory construction that the language of AS 23.30.055 does not bar a negligence action when a workers' compensation claim is controverted under AS 23.30.235. Both arguments rely on Nelson's lack of a workers' compensation remedy, yet he has never asked the Board or the superior court to determine whether his injury occurred in the course and scope of employment,[42] nor has he attempted to pursue a remedy before the Board.[43] Because the mere controversion of benefits did not establish that Nelson is not entitled to his workers' compensation remedies, his constitutional and statutory claims are not ripe. We have previously required a party to use available administrative processes before asserting a constitutional claim be-

**34.** *Ehredt v. DeHavilland Aircraft Co. of Canada, Ltd.*, 705 P.2d 446, 450 (Alaska 1985) (citing *G & A Contractors v. Alaska Greenhouses*, 517 P.2d 1379, 1382–83 (Alaska 1974)).

**35.** *Id.*

**36.** *Id.; see also Himschoot*, 908 P.2d at 1040 (noting that no claim had been filed).

**37.** *Himschoot*, 908 P.2d at 1040.

**38.** *See Nickels v. Napolilli*, 29 P.3d 242, 254 (Alaska 2001) (affirming decision that Nickels was employee and remanding case to allow her to pursue claim before the Board).

**39.** *See Himschoot*, 908 P.2d at 1038–39 (describing bifurcated trial court proceeding).

**40.** 145 P.3d 533, 541 (Alaska 2006).

**41.** *Id.* at 538–41.

**42.** Relying on cases from other states, Nelson argues that Alaska Concrete's controversion based on his alleged intoxication takes the injury outside the coverage of the workers' compensation act because under these cases the injury would not have occurred in the course and scope of employment.

**43.** We also asked the parties to provide supplemental briefing on whether Nelson could still pursue a workers' compensation claim. The parties agreed that he could. We do not decide this issue because Alaska Concrete was not a party in the superior court or this appeal.

cause "successful pursuit of a claim through the administrative process could obviate the need for judicial review of the constitutional issues." [44] Likewise, we have held that "[a] party raising a constitutional challenge to a statute bears the burden of demonstrating the constitutional violation." [45] These principles apply to Nelson's case.

Nelson does not raise a facial constitutional challenge to the statute in this court: his constitutional argument hinges on the alleged lack of a remedy for his injury, not on a general lack of a remedy under all circumstances.[46] Because Nelson has not litigated his claim before either the Board or the court, he is unable to demonstrate that in fact he has no remedy.[47] Nelson is effectively asking us to address a hypothetical situation, but we decline to do so.

## IV. CONCLUSION

We AFFIRM the superior court's decision that the Municipality is a project owner. We REMAND the case for further proceedings consistent with this opinion.

FABE, Justice, not participating.

**44.** *Ben Lomond, Inc. v. Municipality of Anchorage*, 761 P.2d 119, 122 (Alaska 1988).

**45.** *Baxley v. State*, 958 P.2d 422, 428 (Alaska 1998).

**46.** *See State v. Native Vill. of Nunapitchuk*, 156 P.3d 389, 405 (Alaska 2007) (distinguishing between facial and as-applied constitutional challenges).

**47.** We acknowledge that it has been more than two years since Nelson was injured, but this does

not necessarily preclude him from receiving benefits under the workers' compensation act. *See Jonathan v. Doyon Drilling, Inc.*, 890 P.2d 1121, 1125 (Alaska 1995) (holding that two-year period for requesting hearing after employer's controversion only applies to employee's *written* claim for workers' compensation benefits). Here, Nelson did not file a written claim for benefits; his employer paid benefits voluntarily until it received his toxicology test results.